IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONNIE ALEXANDER, ROBIN )
BLISSETT, LOLITA DAVIS, RAVEN )
DAVIS, JASMINE FLEMING, on her )
own behalf and on behalf of her minor )
children ET and ET, DOROTHY FORD, )
JAMES FORD, LATOYA FORD, JAMES )
GLOVER, SHEENA GODFREY, )
MICHELLE HAMPTON, on her own )
behalf and on behalf of her minor children, )
MH and MH, ASHLEY HATCHER, )
RICK HOWARD, AISHA JACKSON, )
TAMARA JACKSON, on her own behalf )
and on behalf of her minor children, KR, )          Case No. 15-cv-03537
CR, KR, DR, and KR, KELVIN JONES, )
MANIKIA JONES, SHWANDA JONES, )                      Judge Virginia M. Kendall
TYREE LAWS, SHAKIRA LEE, )
DEBORAH ANN LEWIS, CELISA )                          Magistrate Judge Sheila M. Finnegan
MORROW, ADARIA NEWELL, )
DANISHA OGLESBY, DENON )
OGLESBY, KASSANDRA OWENS, )
CURTIS RUFAS, DAVID SANDERS, )
SR., DAVID SANDERS, JR., and CIARA )                 COMPLAINT FOR DECLARATORY,
SMITH, )                                             INJUNCTIVE, AND MONETARY
)                                                    RELIEF FOR CIVIL RIGHTS
        Plaintiffs, )                                VIOLATIONS AND STATE LAW
)                                                    VIOLATIONS
        v. )
)
A-ALERT SECURITY SERVICES, INC., )
CONCORDIA PLACE APARTMENTS, )
L.P., PROMEX MIDWEST )
CORPORATION, DRE, INC., RICKY )
MARTINEZ, TRODERRO HURRINGS, )
MOHAMED BOUABDALLAOUI, )
TIEGO HUDSON, JORDAN LLOYD, )
CHRISTOPHER BOLLINGER, )
LACONIA TODD, JOHNNY )
WILLIAMS, IRVIN JENKINS, ALEXIS )
VASQUEZ, JOANNA DZIEDZIC, )
BRITTNEY BUTLER, DAVID )
JOHNSON, JASON JACKSON, )
WILBUTH HOUSTON, other )
CURRENTLY UNKNOWN A-ALERT )
SECURITY GUARDS, the CITY OF )

| | |
|---|---|
| CHICAGO, SCOTT CARTER, STAR | ) |
| #7429, CHRIS SKARUPINSKI, STAR | ) |
| #8254, C.R. CIRELLO, STAR #15671, | ) |
| JAVED ALI, STAR #8411, ADAM | ) |
| ALTENBACH, STAR #13832, and | ) |
| PETER SORAGHAN, STAR #12956, | ) |
| | ) |
| Defendants. | ) |

## THIRD AMENDED COMPLAINT

Plaintiffs, by counsel, allege as follows:

## INTRODUCTION

1.      Plaintiffs RONNIE ALEXANDER (hereinafter "R. Alexander"), ROBIN

BLISSETT (hereinafter "R. Blissett"), LOLITA DAVIS (hereinafter "L. Davis"), RAVEN DAVIS

(hereinafter "R. Davis"), JASMINE FLEMING (hereinafter "J. Fleming"), on her own behalf and

on behalf of her minor children, ET and ET, DOROTHY FORD (hereinafter "D. Ford"), JAMES

FORD (hereinafter "J. Ford"), LATOYA FORD (hereinafter "L. Ford"), JAMES GLOVER

(hereinafter "J. Glover"), SHEENA GODFREY (hereinafter "S. Godfrey"), MICHELLE

HAMPTON (hereinafter "M. Hampton"), on her own behalf and on behalf of her minor children,

MH and MH, ASHLEY HATCHER (hereinafter "A. Hatcher"), RICK HOWARD (hereinafter "R.

Howard"), AISHA JACKSON (hereinafter "A. Jackson"), TAMARA JACKSON (hereinafter "T.

Jackson"), on her own behalf and on behalf of her minor children, KR, CR, KR, DR, and KR,

KELVIN JONES (hereinafter "K. Jones"), MANIKIA JONES (hereinafter "M. Jones"),

SHWANDA JONES (hereinafter "S. Jones"), TYREE LAWS (hereinafter "T. Laws"), SHAKIRA

LEE (hereinafter "S. Lee"), DEBORAH ANN LEWIS (hereinafter "D.A. Lewis"), CELISA

MORROW (hereinafter "C. Lewis"), ADARIA NEWELL (hereinafter "A. Newell"), DANISHA

OGLESBY, (hereinafter "Da. Oglesby"), DENON OGLESBY (hereinafter "De. Oglesby"),

KASSANDRA OWENS (hereinafter "K. Owens"), CURTIS RUFAS (hereinafter "C. Rufas"),

DAVID SANDERS, SR., (hereinafter "D. Sanders, Sr."), DAVID SANDERS, JR., (hereinafter "D. Sanders, Jr."), CIARA SMITH (hereinafter C. Smith), bring this Complaint, requesting that this Court grant an order: (1) declaring that certain actions and policies of Defendants are unlawful; (2) preliminarily and permanently enjoining Defendants' continuing pattern of harassment, intentional infliction of emotional distress, constitutional violations, civil rights violations, and state law violations; and (3) seeking all relief Plaintiffs are entitled to for Defendants' past violations.

2.      Plaintiffs and their family members, including their children, are at a great, immediate risk of injury and danger at the hands of Defendants, and will continue to be at risk until preventative or corrective action is taken.

**PARTIES**

3.      Plaintiffs R. Alexander, R. Blissett, L. Davis, R. Davis, J. Fleming, D. Ford, L. Ford, S. Godfrey, M. Hampton, R. Howard, A. Jackson, T. Jackson, K. Jones, M. Jones, S. Jones, S. Lee, D.A. Lewis, C. Morrow, De. Oglesby, Da. Oglesby, K. Owens, C. Rufas, D. Sanders, Jr., and C. Smith are African-American residents of the Concordia Place Apartments, a low-income housing project (hereinafter "Concordia Place") located in Chicago, Illinois. Each of these Plaintiffs, except for Da. Oglesby, De. Oglesby, and R. Howard is also a lessee of an apartment in Concordia Place.

4.      D. Sanders, Sr., is an African-American residing in the Northern District of Illinois and is the husband and regularly invited visitor of D. Ford. He was banned from visiting his wife and children at Concordia Place by Defendants.

5.      J. Ford is an African-American residing in the Northern District of Illinois and is the cousin of L. Ford, and D. Sanders, Jr., and nephew of D. Ford. He has been an invited visitor of both D. Ford and L. Ford in the past, but has been banned from visiting them.

6.      J. Glover is an African-American residing in the Northern District of Illinois and is the father of a Concordia Place resident and lessee, Chinieta Glover. He was previously banned

3

from visiting his daughter without receiving proper notice, but has since been uncertain whether or not he is still actually banned.

7.      A. Hatcher is an African-American residing in the Northern District of Illinois and is the niece of A. Jackson. She recently moved out of Concordia Place, but continues to visit almost daily.

8.      T. Laws is an African-American residing in the Northern District of Illinois and is the uncle of J. Fleming. He has been banned from visiting her at Concordia Place.

9.      MH and MH are minor children of M. Hampton.

10.     KR, CR, KR, DR, and KR are minor children of T. Jackson.

11.     ET and ET are minor children of J. Fleming.

12.     A. Newell is an African-American female and former resident-lessee of the Concordia Place Apartments, an affordable apartment community (hereinafter "Concordia Place") located in Chicago, Illinois.

13.     Although there are likely more Plaintiffs (including current Plaintiffs' minor and adult children) willing and wanting to pursue these or similar claims, Plaintiffs' counsel believes it prudent to bring this Complaint as soon as possible, in an attempt to prevent imminent injustices and injuries at Concordia Place, which has been described as a prison-like complex where hostility between the residents and security guards has risen to an extremely dangerous and volatile level. Thus, Plaintiffs will likely seek leave to amend this Complaint to add more plaintiffs and/or claims as they arise in the future.

14.     Defendant A-ALERT SECURITY SERVICES, INC. (hereinafter "A-Alert") is an Illinois corporation headquartered in Chicago, Illinois.

15.     A-Alert's principal office is located at 8808 S. Lowe Avenue in Chicago, Illinois 60620.

16.     A-Alert provides private security for, among other types of property, residential apartment complexes.

17.     PROMEX MIDWEST CORPORATION (hereinafter "Promex") is an Illinois corporation headquartered in Libertyville, Illinois.

18.     Promex's principal office is located at 800 Milwaukee Avenue, Suite 170, in Libertyville, Illinois 60048.

19.     DRE, INC. (hereinafter "DRE") is an Illinois corporation headquartered in Libertyville, Illinois.

20.     DRE's principal office is also located at 800 Milwaukee Avenue, Suite 170, in Libertyville, Illinois 60048.

21.     Defendant Concordia Place Apartments, L.P., (hereinafter "Concordia Place Partnership") is an Illinois Limited Partnership created to act as the developer and owner of Concordia Place.

22.     Concordia Place is a United States Department of Housing and Urban Development ("HUD") subsidized or assisted, low-income housing project[1] located in Chicago, Illinois, and is composed of approximately two-hundred ninety-seven (297) studio, one-bedroom, two-bedroom, and three-bedroom apartments units.

23.     DRE is a real estate investment, development, and management firm that has a partial ownership interest in, and acts as the general partner of the Concordia Place Partnership.

24.     Promex is a property management company.

25.     DRE and/or Promex provide(s) on-site management for Concordia Place.

26.     The Concordia Place on-site management office is located at 13037 S. Daniel Drive in Chicago, Illinois 60827.

---

[1] On information and belief, Concordia Place falls under Section 8 [42 U.S.C. § 1437f].

27.     A-Alert provides on-site security to Concordia Place on behalf of the Concordia Place Partnership, DRE, and/or Promex.

28.     Defendant RICKY MARTINEZ (hereinafter "Martinez") is the president of A-Alert, and is a resident of the Northern District of Illinois.

29.     Martinez also acts as head security guard/supervisor of A-Alert at Concordia Place.

30.     TRODERRO HURRINGS, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, JORDAN LLOYD, CHRISTOPHER BOLLINGER, LACONIA TODD, JOHNNY WILLIAMS, IRVIN JENKINS, ALEXIS VASQUEZ, JOANNA DZIEDZIC, BRITTNEY BUTLER, DAVID JOHNSON, JASON JACKSON, and WILBUTH HOUSTON were, at all relevant times, security guards for A-Alert.

31.     Defendants other CURRENTLY UNKNOWN A-ALERT SECURITY GUARDS are security guards employed by Martinez and A-Alert to provide security services at Concordia Place.[2]

32.     Defendant CITY OF CHICAGO (hereinafter "City") is a municipal corporation incorporated under the laws of the State of Illinois and is responsible for the operation of the Chicago Police Department (hereinafter "CPD").

33.     SCOTT CARTER, STAR #7429, CHRIS SKARUPINSKI, STAR #8254, C.R. CIRELLO, STAR #15671, JAVED ALI, STAR #8411, ADAM ALTENBACH, STAR #13832, and PETER SORAGHAN, STAR #12956, were, at all relevant times, police officers employed by the City and working for the CPD under the color of law.

## JURISDICTION AND VENUE

34.     This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. § 1983].

---

[2] Plaintiffs will seek to amend their Complaint to include the names of any unidentified A-Alert Defendants if and when their identities are discovered.

35.     This action also arises under Title VI of the Civil Rights Act of 1964, as amended, the laws of Illinois, and the Municipal Code of Chicago, Residential Landlords and Tenants Ordinance, Chapter 5-12.

36.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343(a).

37.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

38.     This Court has personal jurisdiction over each individual Defendant because all actions complained of herein occurred in Illinois and, upon information and belief, all individual Defendants are residents of Illinois.

39.     This Court has personal jurisdiction over each of the other named Defendants as they are all Illinois entities operating within Illinois, and all actions complained of herein occurred in Illinois.

40.     Venue is proper in this District because all of the conduct complained of occurred in this District.

## COMMON FACTS RELATING TO THE BANNING POLICY

41.     Defendants Concordia Place Partnership, DRE, Promex, and/or A-Alert have developed a process for banning non-resident individuals from stepping foot onto any area of Concordia Place.

42.     Pursuant to this process, Martinez and/or other A-Alert Defendants ban individuals or cause individuals to be banned from the property.

43.     Sometimes Martinez and/or other A-Alert Defendants provide banned individuals with "Criminal Trespass Notices" indicating that the individuals will be arrested and charged for criminal trespass if they return to Concordia Place.

44.     Upon information and belief, other times, there is no such written notice provided to individuals who are banned.

45.     Upon information and belief, Martinez and/or other A-Alert Defendants often have discretion over directly banning individuals, and/or over causing non-resident individuals to be banned.

46.     Banned individuals are often family members, intimates, friends, clients, acquaintances, guests, or visitors of Concordia Place residents.

47.     If it comes to their attention that a banned individual has entered the Concordia Place property, Defendants Martinez and/or other A-Alert Defendants often immediately apprehend and detain that individual, then call the Chicago Police Department (hereinafter "CPD") to arrest and charge the individual for criminal trespass.

48.     Further, individuals who are arrested for violating the ban are very often arrested even though they have been invited onto the property by their family members, intimates, friends, or business relationships who reside at Concordia Place.

49.     Although, allegedly, there currently exists an automatic review procedure[4] by Promex and/or DRE for bans that were not the result of violence, drugs, criminal activity, and/or weapon charges against the banned individual, the decision to initially ban individuals and to provide notice of the ban, upon information and belief, is often left up to A-Alert and carried out by Martinez and/or other A-Alert Defendants.

50.     Since A-Alert was first retained to provide security to Concordia Place, and more so in the past six (6) months, numerous complaints have been made by Concordia Place residents to

---

[4] This review procedure was only instated as the result of a mutual agreement between Promex and/or Dre and Concordia Place residents who complained to their local alderman about the banning policy. A representative of the residents' local alderman engaged in these negotiations on behalf of the residents.

Promex, DRE, and the local alderman's office regarding the discriminatory and unfair use of this banning practice by Martinez, and other A-Alert Defendants.

51.     As part of their practice of acting as a private police force at Concordia Place, as further described below, Martinez, and/or Other Unknown Guards essentially use this banning practice as a penalty/punishment for residents and banned individuals, and as a substitute for not having the legal authority to actually charge individuals with crimes, like police do.

52.     These Defendants discriminatorily use the banning procedure as part of a strategy to get residents evicted, to harass them, or to otherwise cause them harm.

53.     Problematically, these Defendants use the banning policy unfairly, often unlawfully, without proper cause or reason, and/or in a way that deprives residents and visitors of their constitutionally guaranteed rights.

54.     Further, regardless of how it is applied, the banning policy is unconstitutional on its face because it makes no exceptions to protect rights guaranteed to the Plaintiffs by the Bill of Rights and Fourteenth Amendment to the United States Constitution.

## RELEVANT LEASE TERMS

55.     The following lease terms are included in each Concordia Place tenant's lease:

7.    Should Tenant 1.) invite a person who has received a CRIMINAL TRESPASS NOTICE or been otherwise barred from the project and/or 2.) have knowledge of the entrance of that person onto any property owned or controlled by the Owners of the Project and not immediately report that knowledge to the management office, it shall constitute a material violation of Tenant's lease and shall be good cause for termination of tenancy.

61.   …Residents and/or their guests are not to record security with cell phones, cameras, etc.

## COMMON FACTUAL ALLEGATIONS GIVING RISE TO 42 U.S.C. § 1983 LIABILITY

*For A-Alert, Martinez, and other A-Alert Defendants*

56. A-Alert and Ricky Martinez, President of A-Alert, on behalf of the Concordia Place Partnership, DRE, and/or Promex, have established a draconian security force at Concordia Place that amounts to a private police force.

57. At Concordia Place, Martinez and other A-Alert Defendants perform countless "duties" exclusively reserved to states and their municipal police departments.

58. Martinez and other A-Alert Defendants drive vehicles with lights similar to those on police cars.

59. They drive these vehicles in excess of 40 miles per hour, on grass and on concrete areas not intended to be roadways, all while children are present at risk of being struck by their vehicles.

60. They pull vehicles over, ask for licenses, registration documents, and proof of insurance.

61. They carry guns.

62. Martinez carries a large, high-powered automatic or semi-automatic rifle.

63. They wear body armor.

64. They carry other weapons, such as stun guns/Tasers and pepper spray/mace.

65. They use K-9 dogs to sniff and search residents, visitors, property, and vehicles.

66. These dogs are often unmuzzled.

67. They use these dogs to apprehend, detain, and bite individuals.

68. They conduct vehicle searches on residents and visitors.

69. They conduct body searches on residents and visitors.

70. They have conducted a strip search on at least one visitor.

71. They enter residents' homes without permission.

72. They conduct home searches on residents.

73.     They handcuff residents and visitors.

74.     The push residents and visitors against walls.

75.     They slam residents and visitors to the ground.

76.     They pin residents and visitors to the ground using their knees or other parts of their bodies.

77.     They detain residents and visitors.

78.     They hold residents and visitors against their will at a public security office.

79.     They order that residents' and visitors' cars be towed.

80.     They use force in carrying out these "duties," including but not limited to, using their knees on detainees, grabbing detainees, pulling detainees, slamming detainees to the ground, pinning detainees to the ground, choking detainees, and having K-9 dogs bite detainees.

81.     They investigate and question residents and visitors.

82.     They hide in bushes, on the sides of houses, and in vehicles, among other places, and spy on residents and visitors.

83.     They stakeout individual apartment buildings to investigate and spy on residents and visitors.

84.     They use binoculars to spy on residents inside their homes.

85.     They cuss at residents and visitors, use racial slurs against residents, and show contempt and a general lack of respect for almost everybody they encounter at Concordia Place.

86.     They use a criminal database to keep track of residents' and visitors' criminal history, warrants, arrests, citations, convictions, etc., and then use this information against residents and visitors.

87.     They use the Concordia Place Partnership's, DRE's, and/or Promex's banning policy as a penalty similar to that of a criminal penalty.

88. They order the CPD to charge residents and visitors with crimes, and use criminal procedure to falsely arrest and maliciously prosecute residents and visitors, often to try to further their own punishment of residents and by seeking to have them evicted.

89. They use scare tactics and threaten to use the banning policy to harm residents and visitors.

90. They ban residents' visitors from Concordia Place so that they can seek to have the residents evicted when their visitors violate the ban.

91. They intentionally seek to have residents evicted by other methods, including getting the CPD to falsely charge them with criminal violations.

92. They have essentially established a 297-cell prison in which many residents of Concordia Place are like inmates, and their visitors are banned for anything from petty personal reasons, to parking in the wrong parking space, to simply coming onto the property to visit.

93. They have discretion over their duties, and often refuse to investigate criminal complaints made by residents.

94. They perform these actions, in large part, without relying on the actual police for anything other than transporting residents and visitors to CPD stations and actually charging them with crimes.

95. They often have no legal cause or reason for the above actions that do require such cause or reason.

96. Martinez and other A-Alert Defendants are therefore acting under the color of law for the purposes of 42 U.S.C. § 1983.

97. Defendants A-Alert, Concordia Place Partnership, DRE and/or Promex, have had ample notice and knowledge of residents and visitors being harmed by Martinez and other A-Alert Defendants while they were exercising the practically unrestrained power described above.

12

98.     Yet, these entity Defendants have taken no reasonable action to correct or prevent residents or visitors from being harmed by this type of conduct, and have continued to employ and commend Martinez's, and other A-Alert Defendants' services.

### For All Non-City Defendants

99.     Further, providing affordable publicly operated housing has, for hundreds of years, been a function and a responsibility largely accepted by federal, state, and local governments.

100.    The federal government, because of a lack of funding, is unable to directly provide as much low-income public-housing as the City of Chicago has been deemed to require.

101.    The federal government, the State of Illinois, and the City of Chicago, therefore acted in conjunction to provide the subsidized private-housing at Concordia Place, and these entities continue to support and allow Concordia Place's existence and function under private ownership and management.

102.    The federal government, the State of Illinois, and the City of Chicago worked together directly with the Concordia Partnership, DRE, and/or Promex to approve the development, financing, ownership, and operation or Concordia Place.

103.    The Concordia Partnership, Promex, and/or DRE receive federal assistance in operating Concordia Place, in the form of rent subsidies.

104.    The Concordia Partnership funded part of the purchase and/or development of Concordia Place using City of Chicago bonds.

105.    Concordia Place's existence and its federal assistance rely upon approval from the State and/or from the City of Chicago.

106.    Further, banning residents' invited visitors from Concordia Place in violation of traditional landlord-tenant common law is purportedly lawful under Illinois State law.

107.    The actual enforcement of the banning policy is partially carried out by the CPD, which itself is operated pursuant to the State of Illinois' police powers.

108.    Any eviction proceeding initiated or threatened against residents of Concordia Place would proceed under Illinois state law and/or local law.

109.    The Concordia Place Partnership thus acts as an instrumentality of the State and the City of Chicago in the development, ownership, and operation of Concordia Place, and its own agents, Promex, DRE, and A-Alert, are extensions of it, retained to assist in Concordia Place's ownership, development, and operation.

110.    The actions of all Defendants complained of herein are therefore so interrelated with the goals and direction of the State of Illinois and City of Chicago that they constitute state action for the purposes of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS PERTAINING TO RONNIE ALEXANDER

111.    Within the past few months or so, Martinez and/or other A-Alert Defendants approached R. Alexander with a gun drawn, apprehended him, and searched his body, all without adequate legal cause.

112.    This was just one incident in a pattern of harassment that Martinez and/or other A-Alert Defendants have established against R. Alexander.

113.    Further, Martinez and/or other A-Alert Defendants have banned R. Alexander's friends from Concordia Place.

114.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing R. Alexander and of committing violations of law, if corrective and/or preventative action is not taken.

14

115.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, R. Alexander has been prevented and will be prevented from associating with his friends.

**FACTUAL ALLEGATIONS PERTAINING TO ROBIN BLISSETT**

116.    For the past couple of years, two of R. Blissett's cousins have been banned from Concordia Place.

117.    When they try to visit R. Blissett, Martinez and/or other A-Alert Defendants harass them, search them, take them to the security office, and seek to have them charged with crimes, all without adequate cause.

118.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress R. Blissett by, among other things, investigating, searching, and/or causing to be banned R. Blissett's cousins.

119.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing R. Blissett and of committing violations of law, if corrective and/or preventative action is not taken.

120.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, R. Blissett has been prevented and will be prevented from associating with her cousins.

**FACTUAL ALLEGATIONS PERTAINING TO LOLITA DAVIS**

121.    Martinez and/or other A-Alert Defendants have established a pattern of harassment and disrespect against L. Davis and her visitors, including the father of her children.

122.    Martinez and/or other A-Alert Defendants refer to her and others as "fat bitches," wait around on her porch in the middle of the night with K-9 dogs and guns, and spy on her through her windows, sometimes with binoculars.

123. Martinez and/or other A-Alert Defendants harassed, drew guns on, searched, asked for ID from, took to the security office, and banned from Concordia Place her brother. He is one of multiple relatives of L. Davis that has now been banned from Concordia Place.

124. One night within the past year, L. Davis' children's father was leaving her apartment to go to work at around 2 a.m.

125. When he left, Martinez and other A-Alert Defendants were waiting on L. Davis's porch with guns and dogs, like they have done frequently.

126. They drew their guns, grabbed him, and asked him for ID.

127. These defendants continue to harass, grab, draw guns on, and ask for identification her children's father.

128. They have done all of these things without adequate cause.

129. This has caused her and her family unit great harm.

130. Martinez and/or other A-Alert Defendants have harassed, harmed, and distressed L. Davis by, among other things, investigating, searching, and/or causing to be banned L. Davis's family members, including her cousin and brother.

131. Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing L. Davis and of committing violations of law, if corrective and/or preventative action is not taken.

132. By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, L. Davis has been prevented and will be prevented from associating with her family, friends, and acquaintances.

**FACTUAL ALLEGATIONS PERTAINING TO RAVEN DAVIS**

133. Sometime around August 2014, R. Davis was driving in her car with her children, and with her cell phone on her.

16

134.     Martinez and other A-Alert Defendants ran up to her, ordered her out of the car, told her it was a lease violation to film them, threatened to ban her boyfriend, and told her they would give her a lease violation.

135.     They had no adequate cause to stop and apprehend her.

136.     Further, they prevented her from moving her car by using their own vehicle(s) to block her path.

137.     They had no adequate cause to block her car.

138.     Shortly thereafter, in late summer 2014, R. Davis' boyfriend and his cousin had just stepped onto R. Davis' front porch to smoke cigarettes, when Martinez and/or other A-Alert Defendants stormed up the stairs to apprehend them.

139.     R. Davis' boyfriend and his cousin attempted to go back into R. Davis' apartment, but Martinez and/or other A-Alert Defendants followed them into the apartment, grabbed them, and searched them.

140.     They had no adequate cause for these actions.

141.     Upon allegedly finding a small amount of marijuana, Martinez and/or other A-Alert Defendants took R. Davis' boyfriend and his cousin to the security office and called non-defendant[5] police officers, who did not charge either of them with a crime.

142.     Since these incidents, Martinez and/or other A-Alert Defendants tell R. Davis' and her children that they are not allowed to play in their yard, cuss at her, and threaten to ban her boyfriend from Concordia Place.

---

[5] Where Plaintiffs use the term "non-defendant" they limit it to meaning that the actors are not being named as defendants *only* with regards the specific incident being discussed at the time, and not that they are non-defendants even if complained of elsewhere within the Third Amended Complaint.

143.     Martinez and/or other A-Alert Defendants continue to harass, harm, and distress R. Davis by, among other things investigating, searching, and/or threatening her children's father when he is at Concordia Place.

144.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing R. Davis and of committing violations of law, if corrective and/or preventative action is not taken.

145.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, R. Davis has been prevented and will be prevented from associating with her family members and/or intimates.

**FACTUAL ALLEGATIONS PERTAINING TO JASMINE FLEMING**

146.     On or around April 4, 2015, J. Fleming had a small gathering of family and friends at her apartment to celebrate Easter.

147.     At some point during that evening, J. Fleming left her apartment and Concordia Place briefly.

148.     She returned in her car with her brother, sister, and cousin.

149.     As they were driving up to her apartment, Martinez and/or other A-Alert Defendants drove up behind them with their security light on and pulled them over.

150.     There was no adequate cause to stop the vehicle.

151.     When she saw the lights, J. Fleming stopped the vehicle and exited.

152.     As she did this, Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants jumped out of their vehicles, drew their guns and charged at J. Fleming's vehicle.

153.     There was no adequate justification for drawing weapons on J. Fleming or her family members.

154. Martinez and/or other A-Alert Defendants then told J. Fleming, who was outside of her vehicle at this point, to step aside because they were not interested in her.

155. These defendants then tried to grab and open a door to her vehicle.

156. While this was happening, J. Fleming questioned the defendants about their actions.

157. Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants quickly became frustrated with J. Fleming, began yelling at her, and told her "if you want to get smart, everybody can leave your apartment," or something to that effect.

158. These defendants informed J. Fleming that they had actually just come from her apartment and that they were going to shut down her gathering.

159. These Defendants also said to J. Fleming – "this is the problem with *you people*, living out here on our tax dollars, this is what y'all live for: drama," or something to that effect.

160. Martinez and/or other A-Alert Defendants then ordered her cousin to leave Concordia Place. He left.

161. J. Fleming then agreed to have everybody leave her apartment, but told Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants that she would not allow defendants to actually enter her home.

162. These defendants then called for more security guards, who then all went to her apartment with a K-9 dog in order to kick everybody out.

163. Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants sped up to J. Fleming's apartment, driving and parking on the grass, where children, including one or more of J. Fleming's minor children, were playing.

164. At some point, while around 10 or more A-Alert Defendants were in front of J. Fleming's apartment telling people to leave, other residents and visitors of Concordia Place, noticing the scene, called non-defendant police officers on the A-Alert Defendants.

165. At some point, these police officers did arrive, and told J. Fleming to kick everybody out.

166. The non-defendant police officers also told Martinez and/or other A-Alert Defendants that they could not enter J. Fleming's home.

167. At that point, J. Fleming was complying and telling her guests to leave.

168. But, at some point, Martinez and/or other A-Alert Defendants began physically grabbing and escorting J. Fleming's guests off of the property.

169. During this time, one Other A-Alert Guard put his face up close to J. Fleming's face, yelled at her, put his hand in her face, and bumped her with his chest.

170. Subsequently, one of J. Fleming's relatives took her into her house to calm down because she had become angry with defendants.

171. While she was in her apartment, Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants stormed into her house and searched her bedrooms, bathroom, toilet, closets, and other areas.

172. During this search, these defendants broke her closet door (by putting a hole in it) and damaged her window blinds.

173. Also during this search, these Defendants used a Taser on J. Fleming's uncle, T. Laws, without adequate cause, in front of at least one of her minor children.

174. These Defendants banned J. Fleming's uncle from Concordia Place after this incident.

175.     There was no adequate cause for any of the actions related to the search.

176.     When J. Fleming went to report this incident to DRE/Promex management, the manager on duty would not let her in.

177.     DRE/Promex has been unresponsive to J. Fleming's attempts at complaining about A-Alert.

178.     Martinez and/or other A-Alert Defendants have also established a pattern and practice of harassing, distressing, and harming J. Fleming, her minor children, and her guests by, among other things, standing outside of her apartment doors watching them, parking behind her apartment and spying on them, and threatening to ban her guests.

179.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing J. Fleming and her minor children and of committing violations of law, if corrective and/or preventative action is not taken.

180.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, J. Fleming and her minor children have been prevented and will be prevented from associating with their family members, friends, and/or intimates.

**FACTUAL ALLEGATIONS PERTAINING TO DOROTHY FORD**

181.     D. Ford has been a resident of Concordia Place for approximately twenty-six (26) years.

182.     Since A-Alert was retained to provide security to Concordia Place, Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing D. Ford.

183.     Within the past year, Martinez and/or other A-Alert Defendants have had her vehicle towed without proper cause.

184.     Within the past two (2) years,[6] Martinez and/or other A-Alert Defendants have pulled her daughter's car over without probable cause or reasonable suspicion, and asked her daughter for her license and insurance.

185.     Within the past two (2) years, Martinez and or other A-Alert Defendants have pulled her son-in-law's car over at Concordia Place after he came to visit and threatened to "catch [him] and put [him] on the ban list."

186.     Sometime around August 2014, Martinez and/or other A-Alert Defendants apprehended one of D. Ford's nephews, J. Ford, chased him with K-9 dogs, detained him, took him to a holding area, and banned him from Concordia Place, after he merely came to Concordia Place to borrow ten dollars ($10) from D. Ford.

187.     On or around February 21, 2015, Martinez and/or other A-Alert Defendants apprehended her husband, D. Sanders, Sr., kneed him in the ribs, detained him, and had him arrested for criminal trespass, when he was at Concordia Place visiting D. Ford in order to attend a funeral with his and D. Ford's family.

188.     On or around March 21, 2015, Martinez and/or other A-Alert Defendants, without proper cause, pulled her son, D. Sanders, Jr., out of a car, asked him for his ID, handcuffed him, choked him while he was handcuffed, referred to D. Ford and her family as "you people," told them that they "don't appreciate nothing [*sic*]," and said "get off public aid and find a job somewhere… [and stop] staying out here in these raggedy-ass apartments," or something to the same effect.

189.     Further, during this incident, Martinez ordered one of the other A-Alert Defendants to apprehend D. Ford's nephew, J. Ford, who was merely present at the scene, but the other guard refused and told Martinez that he was going to quit his job as an A-Alert security guard because of Martinez's treatment of the individuals at Concordia Place.

_____

[6] Where Plaintiffs use "within the past two (2) years," they mean two (2) years from the date they initially pled those facts against the Defendants.

190.    Martinez himself then used a Taser on J. Ford, banned him from Concordia Place, and caused J. Ford and D. Ford's son, D. Sanders, Jr., to be falsely arrested.

191.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress D. Ford by, among other things, investigating and banning visitors who come to Concordia Place to see her for any purpose.

192.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing D. Ford and of committing violations of law, if corrective and/or preventative action is not taken.

193.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, D. Ford has been prevented and will be prevented from associating with her family members, friends, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO JAMES FORD

194.    Sometime around August of 2014, J. Ford attempted to visit his aunt D. Ford at Concordia Place.

195.    When he arrived at Concordia Place, Martinez and/or other A-Alert Defendants stormed at him with a K-9 dog and their guns drawn, ordered him to put his hands up and get against the gate, and told him that he was banned from the property as of one year prior.

196.    J. Ford had never been given notice or indication that he was banned, and in fact, he was in prison at the time that Martinez and/or other A-Alert Defendants alleged that they had banned him.

197.    These defendants then took J. Ford to the security office, where J. Ford asked them to see the notice that he had been banned.

198.    These defendants would not provide the notice, which, on information and belief, did not exist, and instead made him sign a new notice that he was banned from the property before allowing him to leave.

199.    Since that date, J. Ford has been harassed numerous times, once on or around November 10, 2014, once on February 16, 2015, and once on March 21, 2015, by Martinez, JOHNNY WILLIAMS, JORDAN LLOYD, and/or other A-Alert Defendants. They have approached him, grabbed him, used a Taser on him to the point that one A-Alert Defendant had to say to Martinez, "stop, or you will kill him!" or something to that effect, handcuffed him, searched him, taken him to the security office, detained him there, called the police to have him charged with trespassing, and caused him to be charged with trespassing.

200.    They have done these things without adequate cause.

201.    Further, when he attempts to visit his aunt and cousin, he is immediately apprehended by Martinez and other A-Alert Defendants, who draw their guns on him, search him, handcuff him, take him to the security office, and/or call the police to have him arrested.

202.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing J. Ford and of committing violations of law, if corrective and/or preventative action is not taken.

203.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, J. Ford has been prevented and will be prevented from associating with his family, friends, and acquaintances.

## FACTUAL ALLEGATIONS PERTAINING TO LATOYA FORD

204.    Since A-Alert was retained to provide security to Concordia Place, Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally, harassing, harming, and intentionally distressing L. Ford.

205.    Since she moved into Concordia Place, Martinez and/or Other-Alert Guards have pulled over, detained, searched, handcuffed, banned from Concordia Place, and had arrested her family members, friends, intimates and/or acquaintances without proper cause.

206.    She can no longer comfortably have visitors over because these Defendants pull over, search, ban and/or have arrested anybody who comes to visit her.

207.    Sometime around August 2014, Martinez and/or other A-Alert Defendants apprehended one of L. Ford's cousins, J. Ford, chased him with K-9 dogs, detained him, took him to a holding area, and banned him from Concordia Place, after he merely came to Concordia Place to borrow ten dollars ($10) from D. Ford.

208.    Within the past two (2) years, L. Ford's children's father has been banned by these Defendants.

209.    Within the past two (2) years, these Defendants caused her children's father to be arrested for merely listening to allegedly loud music on a factory radio.

210.    She and her children live in fear of Martinez, who carries a large rifle, and other A-Alert Defendants, who all carry guns, Tasers, peppery spray, and/or unmuzzled K-9 dogs.

211.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress L. Ford by, among other things, investigating and banning visitors who come to Concordia Place to see her for any purpose.

212.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing L. Ford and of committing violations of law, if corrective and/or preventative action is not taken.

213.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, L. Ford and her children have been prevented and will be prevented from associating with their family members, friends, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO JAMES GLOVER

214.    On or around August 26, 2014, J. Glover was attending a memorial party for his son who had passed away a few years prior, which was being held at his daughter Chinieta Glover's apartment at Concordia Place.

215.    As the party was winding down, Martinez, TIEGO HUDSON, and/or other A-Alert Defendants, approached J. Glover with a K-9 dog, forced their way into Chinieta Glover's apartment, and drew guns on him, grabbed him, handcuffed him, and used pepper-spray on him.

216.    He had merely been moving chairs from outside into Chinieta Glover's apartment at that time.

217.    He was told that he was trespassing, and Martinez, TIEGO HUDSON, and/or other A-Alert Defendants, called the CPD to have him arrested.

218.    He spent three days in jail.

219.    Prior to that date, on two or three other occasions around the time of summer 2014, J. Glover was harassed by Martinez and/or other A-Alert Defendants when he attempted to visit his daughter. He was apprehended by Martinez and/or other A-Alert Defendants, who drew guns on him, grabbed him, manhandled him, tackled him to the ground, put knees in his back, handcuffed him, took him to the security office, and/or called the police to have him arrested.

220.    They have done all of these things without adequate cause and/or without proper notice.

221.    Martinez, TEIGO HUDSON, and/or other A-Alert Defendants have harassed, harmed, and distressed J. Glover by, among other things, investigating, searching, and/or causing him to be arrested when he attempts to visit his family members.

26

222.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing J. Glover and of committing violations of law, if corrective and/or preventative action is not taken.

223.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, J. Glover has been prevented and will be prevented from associating with his family, friends, and acquaintances at Concordia Place.

**FACTUAL ALLEGATIONS PERTAINING TO SHEENA GODFREY**

224.    During the summer of 2014, S. Godfrey called A-Alert to report that someone was breaking into her apartment, and Defendant Martinez simply told her to call the CPD.

225.    Since at least November 1, 2014, Defendants Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing S. Godfrey and her children.

226.    On or around March 2, 2015, Martinez and/or other A-Alert Defendants shined a flashlight in S. Godfrey's window.

227.    On this date, S. Godfrey had three male guests staying at her apartment, including her brother.

228.    S. Godfrey used her cell phone's flashlight feature and went outside to investigate the flashlight.

229.    When she went outside she saw that Martinez and/or other A-Alert Defendants had pulled over a pickup truck and were searching the passengers, whom she did not know, about 200 feet from her apartment door.

230.    While this was occurring, Martinez left the area of the pickup truck and brought his K-9 dog over to S. Godfrey's brother's Jeep and had the dog sniff the vehicle while he searched the inside with a flashlight, without any proper cause.

231.    Martinez then returned to the area of the pickup truck, where another A-Alert Guard whispered something in his ear.

232.    After this occurred, Martinez returned to S. Godfrey's area and asked her why she was filming him.

233.    S. Godfrey responded that she was not filming him.

234.    S. Godfrey was not filming Martinez.

235.    Martinez then told S. Godfrey that he was going to violate her lease, ban each and every one of her visitors and guests, and that he was going to tow her brother's Jeep.

236.    Then Martinez and two other A-Alert Defendants yelled at and threatened her until she returned to the inside of her apartment.

237.    These Defendants then blocked her brother's Jeep so that he could not move it.

238.    S. Godfrey called the CPD to intervene and prevent the Jeep from being towed.

239.    Non-defendant CPD officers arrived and did not allow these Defendants to tow the Jeep.

240.    On or around March 9, 2015, Martinez placed a warning sticker on S. Godfrey's guest's car.

241.    Martinez and/or other A-Alert Defendants then hid on the side of S. Godfrey's apartment building until her guest went to move the car.

242.    As soon as the guest started moving his car, these Defendants pulled over the car, and searched him.

243.    These Defendants had searched this guest on numerous previous occasions.

244.    Then Martinez told the guest that he was banning the guest, effective March 12, 2015, and said "I told you guys I was going to do this," meaning ban each and every one of her visitors or guests.

245.     These Defendants are now following S. Godfrey's visitors from door to door, hiding outside her apartment in vehicles until her visitors leave, following, tailgating, and pulling them over when they drive, searching them and their vehicles, and having K-9 dogs sniff their vehicles, all on a regular basis.

246.     Many of S. Godfrey's guests are visiting in order to help her care for her children, go get groceries, take her of her children to the doctor, and other life-tasks.

247.     These Defendants have not found anything illegal during their searches of S. Godfrey's visitors, and yet they continue to search them without proper cause in order to intimidate, harass, harm, and distress her.

248.     These Defendants take the large majority of these actions during times when the Promex and/or DRE on-site management office is closed, so that S. Godfrey and her guests have nobody to complain to when there is an incident.

249.     S. Godfrey has reported these actions to Promex and/or DRE, yet no corrective or preventative action has been taken yet.

250.     Martinez and/or other A-Alert Defendants continue to harass, harm, and distress S. Godfrey and her children by, among other things, investigating and banning their visitors who come to Concordia Place to see them for any purpose.

251.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing S. Godfrey and her children and of committing violations of law, if corrective and/or preventative action is not taken.

252.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, S. Godfrey and her children have been prevented and will be prevented from associating with their family members, friends, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO MICHELLE HAMPTON

29

253.    Since Martinez caused M. Hampton to be charged with a noise violation a few years ago, Martinez and/or other A-Alert Defendants have established a practice of harassing her visitors.

254.    Martinez and/or other A-Alert Defendants harass, follow, investigate, search, and/or cause to be banned or arrested her visitors.

255.    Martinez and/or other A-Alert Defendants banned M. Hampton's sons' father, and it has interfered significantly with their family relationships.

256.    Further, Martinez and/or other A-Alert Defendants conducted a strip search on one of M. Hampton's children's father's friends when he came to visit with him.

257.    They have done all of these things without adequate cause.

258.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress M. Hampton and her minor children by, among other things, investigating, searching, and/or threatening her visitors when they are at Concordia Place, and by maintaining the ban against her children's father.

259.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing M. Hampton and her minor children and of committing violations of law, if corrective and/or preventative action is not taken.

260.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, M. Hampton and her minor children have been prevented and will be prevented from associating with their family members and/or intimates.

**FACTUAL ALLEGATIONS PERTAINING TO ASHLEY HATCHER**

261.    A. Hatcher moved from Concordia Place within the past couple of months or so, after being frequently harassed by Martinez and/or other A-Alert Defendants.

262.     A. Hatcher's aunt, A. Jackson, and cousins, Da. Oglesby and De. Oglesby, who still live at Concordia Place, have had numerous incidents in the past few years with Martinez and/or other A-Alert Defendants.

263.     Martinez and/or other A-Alert Defendants, knowing A. Hatcher is a relative of A. Jackson and her children, began harassing A. Hatcher while she still lived in Concordia Place.

264.     In or around early January 2015, around 1 a.m., A. Hatcher and her boyfriend were leaving her relative's apartment in Concordia Place.

265.     They were walking through the grass, when Martinez and/or other A-Alert Defendants sped up onto the grass behind them in a security truck and turned their security lights on.

266.     Martinez and/or other A-Alert Defendants jumped out of the vehicle with a K-9 dog and their guns (including one or more large rifles) drawn.

267.     Martinez and other A-Alert Defendants forced them to stand against the vehicle, asked them for their IDs (even though they knew A. Hatcher), searched A. Hatcher's boyfriend, and threatened to have him banned.

268.     This is just one of numerous similar incidents that A. Hatcher has had with Martinez and/or A-Alert Guards.

269.     They have done all of these things without adequate cause.

270.     If she is outside at Concordia Place late at night, Martinez and/or other A-Alert Defendants stop A. Hatcher and whomever she is with, draw their guns on her/them, harass her/them, ID and/or search her/them, and threaten them.

271.     A. Hatcher continues to visit Concordia Place daily, and continues to be harassed by Martinez and/or other A-Alert Defendants in a similar manner frequently.

272.     Martinez and/or other A-Alert Defendants continue to harass, harm, and distress A. Hatcher by, among other things investigating her, asking her for ID, and/or threatening her when she is at Concordia Place.

273.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing A. Hatcher and of committing violations of law, if corrective and/or preventative action is not taken.

### FACTUAL ALLEGATIONS PERTAINING TO RICK HOWARD

274.     On at least two different occasions within the past couple of years, Martinez and/or other A-Alert Defendants have sped up to R. Howard in a security vehicle, stopped him, asked him for his ID (even though they knew him), searched his body, and harassed him, all with large rifles on them and a K-9 dog present.

275.     They have done all of these things without adequate cause.

276.     Further, R. Howard is scared to leave his mother's apartment where he lives because he knows he is likely to be searched and harassed, even if just traveling to another building at Concordia Place.

277.     Martinez and/or other A-Alert Defendants continue to harass, harm, and distress R. Howard by, among other things investigating, searching, and/or threatening him when he leaves his mother's apartment Concordia Place.

278.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing R. Howard and of committing violations of law, if corrective and/or preventative action is not taken.

### FACTUAL ALLEGATIONS PERTAINING TO AISHA JACKSON

279.     A. Jackson and her adult children, Da. Oglesby and De. Oglesby, who live with her, have been having incidents with Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants for at least the past few years.

280.     Martinez and/or other A-Alert Defendants have established a pattern and practice of harassing her and her family by frequently standing outside on her porch, investigating them, following them around, and banning their acquaintances and family members.

281.     They have done all of these things without adequate cause.

282.     Martinez and/or other A-Alert Defendants continue to harass, harm, and distress A. Jackson and her family by, among other things investigating and threatening them and/or their visitors at Concordia Place.

283.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing A. Jackson and her family and of committing violations of law, if corrective and/or preventative action is not taken.

### FACTUAL ALLEGATIONS PERTAINING TO TAMARA JACKSON

284.     T. Jackson and her minor children, KR, CR, KR, DR, and KR, have been harmed by the reckless conduct of Martinez and/or other A-Alert Defendants, and have suffered harms by their investigation and harassment of their family members.

285.     T. Jackson's husband and father of her minor children has been pulled over, harassed, had large guns drawn on him, and been asked for ID, among other things, by Martinez and/or other A-Alert Defendants.

286.     T. Jackson's uncle has been pulled over, harassed, had large guns drawn on him, and been asked for ID, among other things, by Martinez and/or other A-Alert Defendants.

287.    T. Jackson's husband's and uncle's fears of these Defendants has caused significant familial distress; her husband no longer wants to come in and out of T. Jackson's apartment, and her uncle and aunt no longer visit Concordia Place.

288.    Further, within the past two years, Martinez and/or other A-Alert Defendants sped a security vehicle onto the grass where children, including T. Jackson's minor children were playing, during their chase of another resident.

289.    Martinez and/or other A-Alert Defendants nearly struck T. Jackson's minor daughter with a vehicle, then exited with guns drawn, and pointed them at or around a group of children and adults telling them to step back while they apprehended the person they were chasing.

290.    There was no adequate cause for this use of force.

291.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress T. Jackson and her family by, among other things investigating and threatening them and/or their visitors and family members at Concordia Place.

292.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing T. Jackson and her family and of committing violations of law, if corrective and/or preventative action is not taken.

## FACTUAL ALLEGATIONS PERTAINING TO KELVIN & MANIKIA JONES

293.    Since A-Alert was retained to provide security to Concordia Place, Defendants Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing M. Jones and her husband K. Jones.

294.    Martinez and/or other A-Alert Defendants have harassed and continue to harass, harm, and distress them frequently by among other things, investigating and banning their visitors, including their family members and/or friends, who come to see them for any purpose.

34

295.    Further, Martinez and/or Other Alert Guards have entered and searched their apartment without permission or prior notice, while M. Jones and K. Jones were not at home.

296.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing M. Jones and K. Jones and violating their rights if corrective and/or preventative action is not taken.

297.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, M. Jones and K. Jones have been and will be prevented from associating with their family members and/or friends.

## FACTUAL ALLEGATIONS PERTAINING TO SHWANDA JONES

298.    Since at least June 2014, Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harming, harassing, and distressing S. Jones, with the intent of causing her and her children harm and/or of eventually having them evicted from her apartment at Concordia Place.

299.    Martinez and/or other A-Alert Defendants have banned, or caused to be banned, her and/or her children's family members, friends, acquaintances, and/or clients from entering Concordia Place Apartments.

300.    In June 2014, S. Jones' fiancé was banned from Concordia Place.

301.    One night in July 2014, despite the fact that her fiancé had been banned, Martinez and/or other A-Alert Defendants allowed him to visit S. Jones at her apartment.

302.    While her fiancé was at S. Jones' apartment that night, Martinez and/or other A-Alert Defendants hid outside S. Jones' apartment spying on him, S. Jones, and the others present at her apartment that night.

303.    In September of 2014, S. Jones complained to DRE and/or Promex about a security guard working for A-Alert who had been suspected of criminal sexual assault by the police.

35

304.    After S. Jones reported this, the harassment by Martinez and/or other A-Alert Defendants became more severe.

305.    On or around January 9, 2015, about 15 total officers (CPD Officers and A-Alert guards) came to S. Jones' apartment.

306.    Without a warrant or other legal cause to search S. Jones' apartment, Martinez, other A-Alert Defendants, ADAM ALTENBACH, and PATRICK SORAGHAN stormed through her apartment searching her rooms.

307.    Martinez, ADAM ALTENBACH, PATRICK SORAGHAN, and/or other A-Alert Defendants kicked in her doors, trashed her rooms, and went through her cabinets and food, causing damage to her home and her property.

308.    Martinez and/or other A-Alert Defendants ordered ADAM ALTENBACH and PATRICK SORAGHAN to arrest S. Jones; they officers did so.

309.    After arresting S. Jones, ADAM ALTENBACH and PATRICK SORAGHAN began to leave S. Jones' apartment to go to the police station.

310.    But, as they were leaving, they noticed that Martinez and/or other A-Alert Defendants were not leaving S. Jones' apartment and asked Martinez and/or the other A-Alert Defendants what they were still doing there.

311.    Martinez and/or other A-Alert Defendants told them that they were "locking up."

312.    After S. Jones was taken to the police station by ADAM ALTENBACH and PATRICK SORAGHAN, S. Jones' friend, who was still in or around S. Jones' apartment, began to video-record Martinez and/or other A-Alert Defendants on her cell-phone's camera and asked them why they still had not left S. Jones' apartment yet.

313.    Martinez then threatened to ban S. Jones' friend from Concordia Place, took her cell-phone from her, and threw it.

314.     While S. Jones was being held by the CPD, Martinez and/or other A-Alert Defendants remained inside her apartment, ransacked it, flipped over her furniture, ripped open her furniture, and left the entire apartment in disarray.

315.     While S. Jones was being held by the CPD, her daughter came to S. Jones' apartment and knocked on the door.

316.     Martinez answered the door of S. Jones' apartment and told S. Jones' daughter that "everybody was in jail," or something to that effect.

317.     S. Jones' daughter left and later returned to S. Jones' apartment with an adult relative and a key to the apartment.

318.     When they opened the door, Martinez was still inside and he said "you can't be in here, this is my house," or something to that effect.

319.     Martinez then shut the door on them.

320.     When S. Jones returned to her apartment, she discovered the further damage that Martinez and/or other A-Alert Defendants had done to her home and furniture.

321.     On or around March 18, 2015, Martinez and/or other A-Alert Defendants harassed S. Jones once again.

322.     S. Jones provides childcare services to clients in the area.

323.     S. Jones has the right to engage in this legal, profit-making activity incidental to living in her apartment unit.

324.     On or around March 18, 2015, Martinez and/or other A-Alert Defendants blocked one of S. Jones' client's cars in her parking spot, would not let her client leave, tried to have her client arrested, and told her client to find someone other than S. Jones to care for her child.

325.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress S. Jones by, among other things, investigating, banning, searching, and/or causing to be arrested visitors who come to Concordia Place to see her for any purpose.

326.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing S. Jones and of committing violations of law, if corrective and/or preventative action is not taken.

327.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, S. Jones and her children have been prevented and will be prevented from associating with their family members, friends, clients, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO TYREE LAWS

328.    On or around April 4, 2015, T. Laws was visiting his cousin, other relatives, and friends at J. Fleming's apartment in Concordia Place.

329.    When Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants approached J. Fleming's apartment to order her guests to leave, T. Laws was on the balcony outside J. Fleming's apartment.

330.    From this vantage point, T. Laws witnessed a defendant security guard was ordering a K-9 dog to bite one of J. Fleming's guests.

331.    T. Laws, yelled at this Defendant guard from the balcony about using a dog to bite someone.

332.    Martinez, MOHAMED BOUABDALLAOUI, TIEGO HUDSON, TRODERO HURRINGS, JORDAN LLOYD, and/or other A-Alert Defendants then became extremely hostile, and stormed up the stairs to where T. Laws was.

333.    These defendants then handcuffed him.

38

334. After T. Laws had been handcuffed, these defendants used a Taser on his body numerous times.

335. These defendants had no adequate cause for using a Taser on T. Laws after he already been restrained and handcuffed.

336. These defendants then transported T. Laws to a holding area, where Martinez angrily yelled "who's not real cops now, you motherfucker!" or something to that effect.

337. They subsequently had him arrested by non-defendant CPD officers and charged with criminal trespass and battery.

338. T. Laws had never received notice that he was not permitted to visit Concordia Place.

339. T. Laws did not commit a battery.

340. Defendants had no cause to believe that T. Laws had committed a crime.

341. These charges were dismissed in T. Laws' favor.

342. Unfortunately, as a result of the false charges, T. Law was denied employment.

343. By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, T. Laws has been and will be prevented from associating with his family members and friends.

## FACTUAL ALLEGATIONS PERTAINING TO SHAKIRA LEE

344. Martinez and/or other A-Alert Defendants have banned S. Lee's boyfriend and S. Lee's boyfriend's friend from Concordia Place without providing them any notice or reason.

345. Recently, S. Lee's boyfriend came to visit S. Lee, and was stopped, detained, and arrested for trespassing.

346. S. Lee and her boyfriend did not know that he had been banned from Concordia Place prior to this arrest.

347.    While her boyfriend was being arrested, S. Lee asked Martinez and/or other A-Alert Defendants why he had been banned, and one A-Alert Defendant responded "I can ban someone just because I don't like the color of his skin," or something to that effect.

348.    Martinez and/or other A-Alert Defendants called the CPD, and Officers SCOTT CARTER and CHRIS SKARUPINSKI responded.

349.    As SCOTT CARTER and CHRIS SKARUPINSKI were attempting to arrest S. Lee's boyfriend, S. Lee yelled at them.

350.    She did not physically interfere with them, nor did she make any threatening gestures.

351.    SCOTT CARTER and CHRIS SKARUPINSKI arrested her and charged her with obstructing a police officer merely because she yelled at them.

352.    A person cannot commit assault with words *only*.

353.    This charge was dismissed in S. Lee's favor.

354.    Further, Martinez and/or other A-Alert Defendants harass S. Lee frequently by, among other things, following her around Concordia Place, often all the way to her own apartment door, pulling her car over, shining flashlights in her apartment, pulling their own vehicles in front of hers and then driving very slowly, and spying on her.

355.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing S. Lee and of committing violations of law, if corrective and/or preventative action is not taken.

356.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, S. Lee has been prevented and will be prevented from associating with her family members, friends, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO DEBORAH ANN LEWIS

40

357.    Within the past two years, D. A. Lewis has been a frequent victim of Martinez's and/or other A-Alert Defendants' harassment.

358.    Martinez and/or other A-Alert Defendants investigate, draw guns on, harass, ask for ID, search, and threaten D.A. Lewis, her family members, her children's father, her friends, and her acquaintances, often with a K-9 dog.

359.    They have taken all of these actions without adequate cause.

360.    Further, Martinez and other A-Alert Defendants frequently refer to D.A. Lewis and her family as "niggers."

361.    When D.A. Lewis' white cousin visits, Martinez and/or other A-Alert Defendants say tom him "what are you doing out here with these niggers," "don't let me catch you out here with these niggers again," and other similar statements.

362.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress D.A. Lewis and her family by, among other things investigating and threatening them and/or their visitors and family members at Concordia Place.

363.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing D.A. Lewis and her family and of committing violations of law, if corrective and/or preventative action is not taken.

### FACTUAL ALLEGATIONS PERTAINING TO CELISA MORROW

364.    Since A-Alert was retained to provide security to Concordia Place, Defendants Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming and distressing C. Morrow and her children.

365.    At one point in the past two (2) years, C. Morrow was coming down the stairs exiting her apartment, when Martinez and/or other A-Alert Defendants stopped her and asked her what was in her pocket.

366. Martinez and/or other A-Alert Defendants grabbed her pocket and she told them that they could not search her.

367. These Defendants then ordered her to get against a car, before lettering her go.

368. If C. Morrow or her children have visitors come to Concordia Place, Martinez and/or other A-Alert Defendants pull them over, harass them, search them, ban them, and/or have them arrested.

369. Martinez and/or other A-Alert Defendants continue to harass, harm, and distress C. Morrow and her children by, among other things, acting disrespectfully, overreaching their authority, and investigating and banning visitors, including family members, friends, and/or intimidates, who come to Concordia Place to see them for any purpose.

370. Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing C. Morrow and her children and of committing violations of law if corrective and/or preventative action is not taken.

371. By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, C. Morrow and her children have been and will be prevented from associating with their family members, friends, and/or intimates.

**FACTUAL ALLEGATIONS PERTAINING TO ADARIA NEWELL**

372. A. Newell has had numerous incidents/altercations with Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants over the past few years.

373. A. Newell has been discriminatorily and purposefully harassed in multiple ways by Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants.

374. While she was a resident, Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants banned her friends and relatives from visiting her at her apartment without adequate cause or notice.

375.    On May 26, 2013, A. Newell was at her daughter's apartment in Concordia Place.

376.    Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants began harassing A. Newell's daughter's guests by drawing guns on them, ordering them to exit their vehicles, and ordering them to show their IDs.

377.    A. Newell became upset, and she and Martinez began a verbal altercation.

378.    Martinez became very hostile and angry and ordered TRODERRO HURRINGS and/or other A-Alert Defendants to apprehend A. Newell.

379.    Martinez, TRODERRO HURRINGS, and other A-Alert Defendants grabbed A. Newell and handcuffed her.

380.    While she was handcuffed, A. Newell was still arguing with Martinez, but otherwise not actively resisting.

381.    Martinez told her to "shut up," and when she kept talking, ordered TRODERRO HURRINGS and other A-Alert Defendants to "Taser her ass!"

382.    Martinez, TRODERRO HURRINGS, and other A-Alert Defendants did use a Taser on A. Newell, after she had already been detained and handcuffed.

383.    The Taser caused A. Newell to fall onto a car, causing her great physical pain.

384.    Martinez, TRODERRO HURRINGS, and other A-Alert Defendants then caused A. Newell to be arrested and transported to the police station by non-defendant CPD Officers.

385.    There was no adequate cause for these actions.

386.    Martinez, TRODERRO HURRINGS, and other A-Alert Defendants caused A. Newell to be charged with battery, and to go to court in relation to the charge.

387.    She did not commit a battery.

388.    The battery charge was terminated in A. Newell's favor, as Martinez, TRODERRO HURRINGS, and other A-Alert Defendants did not appear in court to prosecute the charges.

389.     A. Newell has since been evicted and banned from Concordia Place, and is currently unable to visit her relatives, including her cousin and brother, who still reside there, without taking the risk of being arrested and charged with trespassing.

## FACTUAL ALLEGATIONS PERTAINING TO DANISHA OGLESBY

390.     On or around July 22, 2013, Da. Oglesby was returning to her mother, A. Jackson's apartment at Concordia Place.

391.     After she entered the apartment, her brother De. Oglesby exited.

392.     Immediately after her brother left, Da. Oglesby heard yelling from outside the apartment.

393.     She ran outside and saw that Martinez, TRODERRO HURRINGS, and/or other A-Alert Defendants had pinned De. Oglesby to the ground with knees in his neck and back.

394.     Da. Oglesby questioned the Defendants about their actions, and they immediately drew their guns on her and on the crowd of people that was in the area, which included multiple children.

395.     Da. Oglesby then attempted to enter her apartment, but Martinez and/or other A-Alert Defendants chased after her, grabbed her wrist, put a single handcuff on her wrist, and yanked her down approximately five (5) stairs.

396.     Da. Oglesby stumbled, and Martinez and/or other A-Alert Defendants placed the other handcuff on her free wrist.

397.     This caused Da. Oglesby great pain.

398.     These Defendants maliciously had non-Defendant CPD officers charge Da. Oglesby with battery.

399.     She did not commit a battery.

400.     The battery charge was dismissed in her favor.

401.     Additionally, Da. Oglesby's uncle and cousin have been banned and/or threatened by these defendants, without adequate cause or notice.

402.     Further, Martinez and/or other A-Alert Defendants have established a pattern and practice of harassing and distressing Da. Oglesby by following her around, watching her, and spying on her home.

403.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing Da. Oglesby and of committing violations of law if corrective and/or preventative action is not taken.

404.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, Da. Oglesby has been and will be prevented from associating with her family members, friends, and/or intimates.

### FACTUAL ALLEGATIONS PERTAINING TO DENON OGLESBY

405.     Since A-Alert was retained to provide security to Concordia Place, Defendants Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing De. Oglesby.

406.     Approximately three to five times per month, Martinez and/or Other A-Alert, among other things, stop, draw guns/assault rifles on, throw to the ground, push against walls, sit on, kneel on, handcuff, search, threaten to plant contraband on, pull the hair of, and/or cause to be arrested De. Oglesby.

407.     On or around May 5, 2015, Martinez and/or other A-Alert Defendants, stopped De. Oglesby without cause or justification, lied about him having a gun on him, and called the CPD to have him falsely arrested and charged with a UUW and a FOID violation.

408.    On or around March 9, 2015, Martinez, JORDAN LLOYD, and/or other A-Alert Defendants stopped De. Oglesby without cause or justification and called CPD to have him arrested for assault.

409.    They have taken all of these actions without adequate cause.

410.    De. Oglesby did not commit the criminal acts that these Defendants caused him to be charged with.

411.    These charges that Martinez and/or other A-Alert Defendants have caused De. Oglesby to be charged with have been dismissed in De. Oglesby's favor.

412.    Further, Martinez and/or other A-Alert Defendants have banned De. Oglesby's uncle and cousin from Concordia Place without proper reason or notice.

413.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress De. Oglesby by, among other things, regularly stopping, searching, and using force on him without cause.

414.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing De. Oglesby and of committing violations of law if corrective and/or preventative action is not taken.

415.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, De. Oglesby has been and will be prevented from associating with his family members, friends, and/or intimates.

### FACTUAL ALLEGATIONS PERTAINING TO CASSANDRA OWENS

416.    At least since an incident in which her daughter was bitten by Martinez and/or other A-Alert Defendants' K-9 dog, C. Owens and her visitors, including family members, have been subjected to frequent harassment.

46

417.     Martinez and/or other A-Alert Defendants investigate her visitors, harass them, ID them, search them, and threaten them.

418.     Martinez and/or other A-Alert Defendants have banned three of her adult children from Concordia Place.

419.     They have done all of these things without adequate cause.

420.     C. Owens is no longer able to have her own daughters visit her at her own home.

421.     This has caused her family unit great harm.

422.     Martinez and/or other A-Alert Defendants have harassed, harmed, and distressed C. Owens by, among other things, investigating, searching, and/or causing to be banned her family members, including her children.

423.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing C. Owens and of committing violations of law, if corrective and/or preventative action is not taken.

424.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, C. Owens has been prevented and will be prevented from associating with her family, friends, and acquaintances.

## FACTUAL ALLEGATIONS PERTAINING TO CURTIS RUFAS

425.     Several times over the past two years, Martinez and/or other A-Alert Defendants have harassed, grabbed, searched, and asked for ID from C. Rufas (even though they knew him) while he was walking at Concordia Place.

426.     There was no adequate cause for these seizures or searches.

427.     Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing C. Rufas and of committing violations of law, if corrective and/or preventative action is not taken.

### FACTUAL ALLEGATIONS PERTAINING TO DAVID SANDERS, SR.

428. Since A-Alert was retained to provide security to Concordia Place, Defendants Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing D. Sanders, Sr.

429. On April 26, 2012, D. Sanders, Sr. was warned about playing loud music while driving in Concordia Place, and told that he would be banned if he committed the same violation in the future.

430. On or around June 1, 2014, Martinez and/or other A-Alert Defendants cited D. Sanders, Sr., for drinking in the common area of Concordia Place outside D. Ford's apartment.

431. On or around June 5, 2014, Martinez, LACONIA TODD, JOANNA DZIEDZIC, and/or other A-Alert Defendants cited D. Sanders, Sr., for speeding on the streets of Concordia Place. In this citation, D. Sanders, Sr., is described as a barred visitor of D. Ford.

432. In relation to the above citation, upon seeing D. Sanders, Sr., driving, Martinez, LACONIA TODD, JOANNA DZIEDZIC, and/or other A-Alert Defendants followed his vehicle to its destination, made verbal contact with D. Sanders, Sr., immediately contacted the CPD in order to charge D. Sanders, Sr., with criminal trespassing and assault, and informed D. Sanders, Sr., that he was banned from Concordia Place.

433. D. Sanders, Sr., did not commit assault and was not even properly alleged to have committed assault. This charge was dismissed in his favor.

434. Non-defendant CPD officers arrived and arrested D. Sanders, Sr., and charged him with assault and trespassing.

435. On or around September 10, 2014, Martinez, WILBUTH HOUSTON, JOANNA DZIEDZIC, JASON JACKSON, and/or other A-Alert Defendants saw D. Sanders, Sr., standing in

the rear of a building at Concordia Place, approached him, and detained him, transported him to a holding area, and called the CPD to arrest him for trespassing.

436.    D. Sanders, Sr., was arrested by non-defendant CPD officers.

437.    On or around October 14, 2014, Martinez, JOANNA DZIEDZIC, DAVID JOHNSON, JASON JACKSON, and/or other A-Alert Defendants saw D. Sanders, Sr., standing in the rear of a building at Concordia Place, approached him, and detained him, transported him to a holding area, and called non-defendant CPD officers to arrest him for trespassing.

438.    On or around February 21, 2015, D. Sanders, Sr., was at Concordia for the purposes of gathering with family between a funeral and post-funeral repast.

439.    When Martinez, JORDAN LLOYD, and/or other A-Alert Defendants noticed him on the property of Concordia Place, and one of these Defendants apprehended him, kneed him in the ribs, detained him, and caused him to be arrested for trespassing.

440.    D. Sanders, Sr., was treated at a hospital for injuries related to this incident.

441.    In or around June 2015, Martinez and/or other A-Alert Defendants saw D. Sanders, Sr., at Concordia Place, approached him, and detained him, transported him to a holding area, and called non-Defendant CPD officers to arrest him for trespassing.

442.    On or around august 23, 2015, D. Sanders, Sr., was at a courthouse for another charge, when an A-Alert Defendant, whose name he cannot recall, falsely and maliciously reported to a Sheriff's Department officer that D. Sanders, Sr., had assaulted him. He had not, and there was no cause to have D. Sanders. Sr., charged with assault or any other crime. This charge has been dismissed in D. Sanders, Sr.'s favor.

443.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing D. Sanders, Sr., and violating his rights if corrective and/or preventative action is not taken.

444.     By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, D. Sanders, Sr., has been and will be prevented from associating with his family members, friends, and/or intimates.

### FACTUAL ALLEGATIONS RELATED TO DAVID SANDERS, JR.

445.     D. Sanders, Jr., recently became a lessee at Concordia Place.

446.     Since A-Alert was retained to provide security to Concordia Place, Martinez and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing D. Sanders, Jr.

447.     Within the past two (2) years, Martinez and/or other A-Alert Defendants had one of D. his cousins, J. Ford, chased by K-9 dogs, detained him, took him to a holding area, and banned him from Concordia Place, after he came to borrow ten dollars ($10) from D. Ford.

448.     On or around February 21, 2015, Martinez and/or other A-Alert Defendants apprehended his father, D. Sanders, Sr., kneed him in the ribs, detained him, and had him arrested for criminal trespass, when he was at Concordia Place visiting in order to attend a funeral with his family.

449.     On or around March 23, 2015, Martinez and/or other A-Alert Defendants, without proper cause, him out of a car, asked him for his ID, handcuffed him, choked him while he was handcuffed, referred to him and his family as "you people," told them that they "don't appreciate nothing [sic]," and said "get off public aid and find a job somewhere… [and stop] staying out here in these raggedy-ass apartments," or something to the same effect.

450.     Further, during this incident, Martinez ordered one of the other A-Alert Defendants to apprehend one of his cousins, J. Ford, who was merely present at the scene, but the other guard refused and told Martinez that he was going to quit his job as an A-Alert security guard because of Martinez's treatment of the individuals at Concordia Place.

451.    Martinez himself then used a Taser on J. Ford.

452.    Martinez, along with C.R. CIRELLO, and JAVED ALI, caused D. Sanders, Jr., to be charged with assault.

453.    He did not commit an assault, he merely yelled without further gesture, and there was no probable cause to believe he had committed an assault.

454.    The assault charge was terminated in his favor.

455.    Martinez and/or other A-Alert Defendants continue to harass, harm, and distress D. Sanders, Jr., by, among other things, stopping, handcuffing, and taking him to the security office, as well as investigating and banning visitors who come to Concordia Place to see him for any purpose.

456.    Martinez and/or other A-Alert Defendants will continue this pattern and practice of harassing, harming, and distressing D. Sanders, Jr., and of committing violations of law, if corrective and/or preventative action is not taken.

457.    By way of the banning policy generally and as a result of the actions of Martinez and/or other A-Alert Defendants, D. Sanders, Jr., has been prevented and will be prevented from associating with his family members, friends, and/or intimates.

## FACTUAL ALLEGATIONS PERTAINING TO CIARA SMITH

458.    Since A-Alert was retained to provide security to Concordia Place, Defendants Martinez, CHRISTOPHER BOLLINGER, and/or other A-Alert Defendants have established a pattern and practice of intentionally harassing, harming, and distressing C. Smith.

459.    Every time these Defendants see C. Smith, they follow her until she either enters an apartment or leaves Concordia Place.

460.    On or around July 1, 2014, C. Smith was returning home and dropping one of her neighbors off when Martinez, CHRISTOPHER BOLLINGER, and/or other A-Alert Defendants began flashing their security lights.

461. C. Smith was worried that a crime had been committed, so she asked these Defendants if they were okay/if everything was okay.

462. After C. Smith asked this, these Defendants cussed at her, drew their guns on her, acted like she was a criminal, detained her, and then caused her to be arrested.

463. On or around February 27, 2015, Martinez and/or other A-Alert Defendants apprehended her and asked her for her ID, even though she had resided as Concordia Place for three (3) years, and they knew her identification information.

464. C. Smith lives in so much fear of these Defendants that she is afraid to even return home after being out.

465. C. Smith has approached Promex and/or DRE and complained about these actions of Martinez and/or other A-Alert Defendants, and the employees there simply tell her to keep a paper trail of the actions.

466. C. Smith has provided Promex and/or DRE with a paper trail of her complaints against Martinez and/or other A-Alert Defendants, but Promex and/or DRE have yet to take any corrective or preventative action.

467. Martinez and/or other A-Alert Defendants have continued, and will continue this pattern and practice of harassing, harming, and distressing C. Smith and of committing violations of law, if corrective and/or preventative action is not taken.

## FEDERAL CLAIMS

**COUNT I: Unreasonable Search & Seizure/Arrest (§ 1983)**
**[R. Alexander, R. Davis, J. Fleming, J. Ford, J. Glover, A. Hatcher, R. Howard, K. Jones, M. Jones, S. Jones, S. Lee, D.A. Lewis, C. Morrow, A. Newell, Da. Oglesby, De. Oglesby, C. Rufas, D. Sanders, Sr., D. Sanders, Jr., & C. Smith against Non-City Defendants]**
**[S. Jones against ADAM ALTENBACH AND PATRICK SORAGHAN]**
**[S. Lee against SCOTT CARTER and CHRIS SKARUPINSKI]**
**[D. Sanders, Jr., against C.R. CIRELLO and JAVED ALI]**

468. Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

469. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges, and immunities secured to them by the Fourth Amendment and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

470. Martinez, and/or other A-Alert Defendants seized and/or searched each of these plaintiffs or their homes, all unreasonably and without probable cause, while acting under the color of law. Therefore, Martinez and/or other A-Alert Defendants are liable for these unlawful searches and seizures/arrests under 42 U.S.C § 1983.

471. As previously mentioned in this Complaint, related criminal charges against Plaintiffs J. Ford, T. Laws, Da. Oglesby, De. Oglesby, A. Newell, D. Sanders, Jr., and D. Sanders, Sr., were ultimately dismissed in their favor.

472. ADAM ALTENBACH and PATRICK SORAGHAN searched S. Jones' home unreasonably and without probable cause, while acting under the color of law. Therefore, ADAM ALTENBACH and PATRICK SORAGHAN are liable for this unlawful search under 42 U.S.C § 1983.

473. SCOTT CARTER and CHRIS SKARUPINKSI, acting under the color of law, seized and arrested S. Lee without probable cause for assault, simply because she yelled at them; the criminal charges against her were dismissed in her favor. Therefore, SCOTT CARTER and CHRIS SKARUPINSKI are liable for the unlawful seizure and false arrest of S. Lee under 42 U.S.C § 1983.

474. C.R. CIRELLO and JAVED ALI, acting under the color of law, seized and arrested D. Sanders, Jr., without probable cause for assault, simply because he yelled at them; the criminal charges against him were dismissed in his favor. Therefore, C.R. CIRELLO and JAVED ALI are liable for the unlawful seizure and false arrest of D. Sanders, Jr., under 42 U.S.C § 1983.

475. Further, the non-City Defendants have established a pattern and practice of violating the protections against unreasonable searches and seizures guaranteed to Plaintiffs by the Fourth

Amendment, and will continue this practice in the future if no preventative and/or corrective action is taken.

476.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are directly liable for the violations committed by the non-City Defendants because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

477.    This has caused and will cause Plaintiffs property damage, pain, suffering, emotional distress, fear, and humiliation.

478.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

**COUNT II: Excessive Force (§ 1983)**
**[R. Alexander, J. Fleming, J. Ford, J. Glover, A. Hatcher, R. Howard, T. Jackson, T. Laws, D.A. Lewis, C. Morrow, A. Newell, Da. Oglesby, De. Oglesby, C. Rufas, D. Sanders, Jr., D. Sanders, Sr., & C. Smith against Non-City Defendants Only]**

479.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

480.    Martinez and/or other A-Alert Defendants were acting under the color of law when, among other things, they drew guns on, had a K-9 dog chase, grabbed, pulled, threw to the ground, sat on, kneeled on, searched, kneed, handcuffed, dragged down stairs, used a Taser on (even when already in handcuffs), used pepper-spray on, and/or pulled the hair of these Plaintiffs.

481.    This force was unnecessary and unreasonable.

482.    All force described above was without legal cause and constituted unnecessary and unreasonable excessive force.

483.    Therefore, Defendants Martinez and other A-Alert Defendants are therefore liable for this force U.S.C § 1983.

484.    Further, these Defendants have established a pattern and practice of using excessive force on Plaintiffs and will continue this practice in the future if no corrective and/or preventative action is taken.

485.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are directly liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

486.    This has caused and will cause Plaintiffs physical harm, pain, suffering, emotional distress, fear, and humiliation.

487.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### COUNT III: Equal Protection Violations (§ 1983)
### [All Plaintiffs against Non-City Defendants Only]

488.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

489.    Defendants violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from discrimination on account of race.

490.    Plaintiffs, as African-Americans, are a members of a protected class.

491.    Defendants' violative conduct described herein almost exclusively occurs against African-Americans.

492.    Defendants' specific conduct towards the Plaintiffs described herein demonstrates a discriminatory animus – notably, Martinez and/or Other Alert Guards stating that they can ban someone for not liking the color of his/her skin, as well as using the terms "niggers" and "you people."

493.    Additionally, Defendants violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from intentional discrimination without a rational basis.

55

494.     Defendants discriminated against Plaintiffs intentionally, with no justifiable, rational basis for singling them out.

495.     The misconduct giving rise to this Count was objectively unreasonable and was undertaken intentionally, with willful indifference to their Constitutional rights.

496.     Defendants were acting under the color of law in depriving Plaintiffs of their equal protection rights.

497.     Therefore, Defendants are liable to Plaintiffs under 42 U.S.C § 1983.

498.     Further, these Defendants have established a pattern and practice of depriving Plaintiffs of their equal protection rights and will continue this practice in the future if no corrective and/or preventative action is taken.

499.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are directly liable for violations committed by Martinez and/or other A-Alert Defendants because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

500.     This has caused and will cause Plaintiffs physical harm, pain, suffering, emotional distress, fear, and humiliation.

501.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

## COUNT IV: Title VI Violations
### [All Plaintiffs against Non-City Defendants Only]

502.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

503.     Defendants have knowingly and intentionally discriminated against Plaintiffs based on their race, African-American, in violation of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d.

504.     42 U.S.C. § 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

505.     Plaintiffs, as African-Americans, are members of a protected class under Title VI.

506.     Defendants' violative conduct described herein almost exclusively occurs against African-Americans.

507.     Defendants' specific conduct towards Plaintiffs giving rise to this Count demonstrates a discriminatory/racial animus.

508.     Defendants have denied Plaintiffs equal benefits of, and subjected them to discrimination in relation to, their residency and presence at Concordia Place, which is a Section 8, federally assisted and/or subsidized apartment project.

509.     Plaintiffs have been damaged by these actions.

510.     Therefore, Defendants are liable to Plaintiffs for violations of Title VI.

511.     Defendants have established a pattern and practice of violating Title VI and will continue this practice in the future, if no preventative and/or corrective action is taken.

512.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are directly liable for violations committed by Martinez and/or other A-Alert Defendants because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

513.     This has caused and will cause Plaintiffs physical harm, pain, suffering, emotional distress, fear, and humiliation.

514.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

## Count V: Violations of First Amendment Rights (§ 1983)
### [All Plaintiffs against Non-City Defendants Only]

515.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here

516.    The banning policy enacted by Defendants Concordia Place Partnership, Promex, and/or DRE, and/or their agents, under the color of law, is unconstitutional on its face because it prevents a substantial amount of protected conduct and prevents Plaintiffs from exercising their fundamental rights in violation the First and Fourteenth Amendments to the United States Constitution.

517.    Defendants, often through Martinez and/or other A-Alert Defendants, have applied the banning policy under the color of law in a way that violates the First and Fourteenth Amendments to the United States Constitution because they have deprived Plaintiffs of their rights to freedom of movement, travel, association, and assembly, and do not tailor their application of the policy narrowly in order to achieve a compelling interest.

518.    Under the color of law, Defendants Martinez and/or other A-Alert Defendants, by monitoring Plaintiffs' activities, the identities of their visitors, and the frequency and duration of their visits, as well as by spying on them (sometimes with binoculars), banning their visitors and clients, prohibiting them from having visitors and clients in their homes, arresting their banned invitees, threatening them with eviction if their banned visitors and clients violate the bans, following them, apprehending them when they simply move from building to building, and making no exceptions for their invitees, family members, or intimate relationships, have deprived Plaintiffs of their First Amendment rights, all without narrowly tailoring their practices to serve a compelling interest.

519.    Therefore, Defendants are liable to Plaintiffs for substantive due process violations under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

58

520. Defendants have established a pattern and practice of violating Plaintiffs' First Amendment rights, and will continue this practice in the future if allowed.

521. Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, and/or their agents are liable for these violations under 42 U.S.C. § 1983 not only because they have enacted an unconstitutional policy under the color of law, but because of they have failed to properly hire or supervise their employees/agents, or to correct or prevent the violative actions of their employees/agents.

522. This has caused and will cause Plaintiffs loss of property and liberty, pain, suffering, emotional distress, fear, and humiliation.

523. Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

### Count VI: Violations of Procedural Due Process Rights (§ 1983)
### [All Plaintiffs against Non-City Defendants only]

524. Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

525. The banning policy enacted by Defendants Concordia Place Partnership, Promex, and/or DRE, and/or their agents, under the color of law, is unconstitutional on its face because it prevents a substantial amount of protected conduct in violation of the Bill of Rights and the Due Process Clause of the Fourteenth Amendment to the United States Constitution without adequate justification.

526. Further, Defendants, often through Martinez and/or other A-Alert Defendants, have applied the banning policy in a way that violates the Bill of Rights and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

527. Defendants, under the color of law, have deprived Plaintiffs of their basic liberty and property interests without the due process of law by banning their clients, family members, friends, acquaintances, guests, intimates and visitors from entering Concordia Place.

59

528. There is no meaningful process for disputing a current or future ban, appealing such a ban, or removing such a ban.

529. There is often little or no notice provided that a ban has even been enacted.

530. Plaintiffs have no recourse to overturn bans that continue to deprive them of Constitutional rights, other than to hope that Defendants DRE and/or Promex overturn the bans six (6) months after their initiation dates.

531. Defendants, acting under the color of law, have deprived and will continue to deprive Plaintiffs of their basic liberty and property interests, including but not limited to, property interests in their homes and business contracts, as well as their liberty interests in associating with family, friends, and intimates by using and enforcing the banning policy without adequate justification.

532. Therefore, Defendants are liable to Plaintiffs for procedural due process violations under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

533. Defendants have established a pattern and practice of violating Plaintiffs' procedural due process rights, and will continue this practice in the future if no preventative and/or corrective action is taken.

534. Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, and/or their agents are liable for these violations under 42 U.S.C. § 1983 not only because they have enacted an unconstitutional policy under the color of law, but because of they have failed to properly hire or supervise their employees/agents, or to correct or prevent the violative actions of their employees/agents.

535. This has caused and will cause Plaintiffs loss of property and liberty, pain, suffering, emotional distress, fear, and humiliation.

536.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

### COUNT VII: Violations of Substantive Due Process Rights (§ 1983)
### [All Plaintiffs against Non-City Defendants only]

537.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

538.     The banning policy enacted by Defendants Concordia Place Partnership, Promex, and/or DRE, and/or their agents, under the color of law, is unconstitutional on its face because it prevents a substantial amount of protected conduct and prevents Plaintiffs from exercising their fundamental rights in violation the Bill of Rights and the Due Process Clause of the Fourteenth Amendment to the United States Constitution

539.     Defendants, often through Martinez and/or other A-Alert Defendants, have applied the banning policy under the color of law in a way that violates the Bill of Rights and the Due Process Clause of the Fourteenth Amendment to the United States Constitution because they have deprived Plaintiffs of their fundamental rights familial association, intimate association, and privacy, and do not tailor their application of the policy narrowly in order to achieve a compelling interest.

540.     Under the color of law, Defendants Martinez and/or other A-Alert Defendants, by monitoring Plaintiffs' activities, the identities of their visitors, and the frequency and duration of their visits, as well as by spying on them (sometimes with binoculars), banning their visitors and clients, prohibiting them from having visitors and clients in their homes, arresting their banned invitees, threatening them with eviction if their banned visitors and clients violate the bans, and making no exceptions for their invitees, family members, or intimate relationships, have deprived Plaintiffs of their fundamental rights of familial association, intimate association, and privacy, all without narrowly tailoring their practices to serve a compelling interest.

541.     Therefore, Defendants are liable to Plaintiffs for substantive due process violations under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.

542.    Defendants have established a pattern and practice of violating Plaintiffs' substantive due process rights, and will continue this practice in the future if allowed.

543.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, and/or their agents are liable for these violations under 42 U.S.C. § 1983 not only because they have enacted an unconstitutional policy under the color of law, but because of they have failed to properly hire or supervise their employees/agents, or to correct or prevent the violative actions of their employees/agents.

544.    This has caused and will cause Plaintiffs loss of property and liberty, pain, suffering, emotional distress, fear, and humiliation.

545.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

## STATE LAW CLAIMS

### COUNT IX: Intentional Infliction of Emotional Distress
**[L. Davis, R. Davis, D. Ford, J. Ford, L. Ford, S. Godfrey, A. Hatcher, K. Jones, M. Jones, S. Jones, S. Lee, D.A. Lewis, C. Morrow, A. Newell, Da. Oglesby, De. Oglesby, C. Rufas, D. Sanders, Sr., D. Sanders, Jr. & C. Smith against Non-City Defendants Only]**

546.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

547.    The conduct of Martinez and/or other A-Alert Defendants described herein was extreme and outrageous.

548.    Defendants Martinez and/or other A-Alert Defendants acted with the intention of causing emotional distress or with reckless disregard to the possibility of causing emotional distress.

549.    The extreme and outrageous conduct of Defendants Martinez and/or other A-Alert Defendants actually and proximately caused these Plaintiffs to suffer severe emotional distress.

550.    These Defendants have established a pattern and practice of intentionally inflicting Plaintiffs with emotional distress, and they will continue this practice if no preventative and/or corrective action is taken.

551.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

552.    This has caused and will cause Plaintiffs physical harm, pain, suffering, emotional distress, fear, and humiliation.

553.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### COUNT X: Negligent Infliction of Emotional Distress
### [The minor children of J. Fleming and the minor children of T. Jackson against Non-City Defendants Only]

554.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

555.    Defendants Martinez and/or other A-Alert Defendants have acted in a way that has caused these Plaintiffs, as bystanders in zones of danger, to reasonably fear for their own safety.

556.    This fear of safety was caused by these Defendants negligence and/or recklessness – they had a duty not to carelessly carry out their "duties" by, without adequate cause, brandishing guns, including assault rifles, driving at fast speeds onto areas where individuals including children are present, and carrying an unmuzzled dog that has bitten numerous individuals.

557.    Defendants, as more fully complained of herein, breached this duty to Plaintiffs.

558.    The breach of this duty has caused these Plaintiffs to reasonably fear for their own safety when in the direct proximity of these defendants while they were carrying out their "duties."

559.    This has caused and will cause Plaintiffs pain, suffering, emotional distress, fear, and humiliation.

560.    These Defendants have established a pattern and practice of negligently inflicting Plaintiffs with emotional distress, and they will continue this practice if no preventative and/or corrective action is taken.

63

561.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

562.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, attorney's fees, and costs.

### COUNT XI: Assault
**[R. Alexander, J. Fleming, J. Ford, J. Glover, A. Hatcher, R. Howard, T. Jackson, T. Laws, D.A. Lewis, C. Morrow, Da. Oglesby, De. Oglesby, A. Newell, C. Rufas, D. Sanders, Sr., D. Sanders, Jr., & C. Smith against Non-City Defendants Only]**

563.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

564.     Defendants Martinez and/or other A-Alert Defendants have acted with intent to create apprehension of harmful or offensive contact and, as a result of those actions, caused apprehension to these plaintiffs.

565.     Defendants Martinez and/or other A-Alert Defendants drew guns, forced against vehicles/gates, threatened with K-9 dogs, used Tasers on, used pepper spray on, choked, and/or intentionally caused apprehension before kneeing these Plaintiffs, all without adequate justification.

566.     These Defendants have established a pattern and practice of committing torts such as assault on Plaintiffs, and they will like commit further assaults if no preventative and/or corrective action is taken.

567.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

568.     This has caused and will cause Plaintiffs pain, suffering, emotional distress, fear, and humiliation.

569.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT XII: Battery
**[R. Alexander, J. Fleming, J. Ford, J. Glover, R. Howard, T. Laws, C. Morrow, Da. Oglesby, De. Oglesby, A. Newell, C. Rufas, D. Sanders, Sr., & D. Sanders, Jr., against Non-City Defendants Only]**

570.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

571.     Defendants Martinez and/or other A-Alert Defendants have intentionally and actually made harmful and offensive physical contact with Plaintiffs, without adequate justification.

572.     Defendants Martinez and/or Other A-Alert handcuffed, grabbed, searched, forced against vehicles/gates, used Tasers on, used pepper spray on, choked, and/or kneed these Plaintiffs.

573.     These Defendants have established a pattern and practice of committing torts such as battery on Plaintiffs, and they will like commit further batteries if no preventative and/or corrective action is taken.

574.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

575.     This has caused and will cause Plaintiffs physical harm, pain, suffering, emotional distress, fear, and humiliation.

576.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT XIII: False Arrest/Imprisonment
**[R. Alexander, R. Davis, J. Fleming, J. Ford, J. Glover, A. Hatcher, R. Howard, T. Laws, S. Lee, D.A. Lewis, C. Morrow, A. Newell, Da. Oglesby, De. Oglesby, C. Rufas, D. Sanders Sr., D. Sanders Jr., & C. Smith against Non-City Defendants Only]**

577.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

578.     Defendants Martinez and/or other A-Alert Defendants intentionally and unlawfully restrained or detained these Plaintiffs against their will, without adequate justification.

579.    These Defendants asked for ID from, grabbed, handcuffed, detained in a holding area, and/or forced against vehicles/gates these Plaintiffs.

580.    These Defendants did not have legal cause or justification for these actions.

581.    As previously mentioned in this Complaint, related criminal charges against Plaintiffs J. Ford, T. Laws, Da. Oglesby, De. Oglesby, A. Newell, D. Sanders, Jr., and D. Sanders, Sr., were ultimately dismissed in their favor.

582.    These Defendants have established a pattern and practice of committing torts such as false arrest and false imprisonment on Plaintiffs, and they will like commit further such torts if no preventative and/or corrective action is taken.

583.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

584.    This has caused and will cause Plaintiffs pain, suffering, emotional distress, fear, and humiliation.

585.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### COUNT XIV: Malicious Prosecution
**[J. Ford, T. Laws, Da. Oglesby, De. Oglesby, A. Newell, D. Sanders, Jr., D. Sanders, Sr., against non-City Defendants only]**
**[S. Lee against SCOTT CARTER and CHRIS SKARUPINSKI]**
**[D. Sanders, Jr., against C.R. CIRELLO and JAVED ALI]**

586.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

587.    Defendants Martinez and/or other A-Alert Defendants maliciously caused criminal proceedings to be commenced against J. Ford, T. Laws, Da. Oglesby, De. Oglesby, D. Sanders, Jr., and D. Sanders, Sr..

588.     Defendants SCOTT CARTER and CHRIS SKARUPINSKI maliciously caused criminal proceedings to be commenced against S. Lee.

589.     Defendants C.R. CIRELLO and JAVED ALI maliciously caused criminal proceedings to be commenced against D. Sanders, Jr.

590.     There was no probable cause for any of the proceedings.

591.     Martinez and/or other A-Alert Defendants created false criminal complaints, provided false evidence, and/or told false stories to the CPD.

592.     These criminal proceedings were terminated against these Plaintiffs in their favor.

593.     These Non-City Defendants have established a pattern and practice of committing torts such malicious prosecution on Plaintiffs, and they will like commit further such torts if no preventative and/or corrective action is taken.

594.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

595.     This has caused De. Oglesby, and will cause Plaintiffs, pain, suffering, emotional distress, fear, and humiliation.

596.     Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

**COUNT XV: Invasion of Privacy (Intrusion upon Seclusion)**
**[All Plaintiffs against Non-City Defendants Only]**

597.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

598.     Illinois recognizes intrusion upon seclusion, an invasion of privacy tort.

599.     Martinez and/or other A-Alert Defendants, as demonstrated by the allegations herein, have intruded into Plaintiffs' private lives and affairs in ways that would be highly offensive to a reasonable person.

600.    These Defendants have established a pattern and practice of invading Plaintiffs' privacy by intrusion upon seclusion, and they will continue this practice if allowed.

601.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

602.    This has caused and will cause Plaintiffs pain, suffering, emotional distress, fear, and humiliation.

603.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

## COUNT XVI: Trespass to Land
### [R. Davis, J. Fleming, K. Jones, M. Jones & S. Jones against Non-City Defendants Only]

604.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

605.    Defendants Martinez and/or other A-Alert Defendants entered Plaintiffs' apartment without permission, proper authority, legal cause, or adequate notice.

606.    Plaintiffs were in rightful possession of their apartments at the times of these intrusions, as lessees/residents.

607.    Plaintiffs were damaged by these intrusions because these Defendants caused them property damage, fear, stress, anxiety, and/or emotional harm.

608.    These Defendants have established a pattern and practice of trespassing into other residents' apartments at Concordia, and will continue this practice if no preventative and/or corrective action is taken.

609.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

610.    This has caused and will cause Plaintiffs property damage, pain, suffering, emotional distress, fear, and humiliation.

611.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### Count XVII: Trespass to Chattels or Conversion
### [D. Ford & S. Jones against Non-City Defendants Only]

612.    Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

613.    Defendants Martinez and/or other A-Alert Defendants intentionally interfered with these Plaintiffs' possessory interests in their chattels without adequate justification or permission.

614.    As alleged herein, these Defendants intentionally caused D. Ford's car to be towed, without permission or adequate justification, and intentionally cut open S. Jones' furniture and ruined her food without permission or adequate justification.

615.    One or more of these trespasses were so great as to amount to dispossessing Plaintiffs of their chattels.

616.    These Defendants have established a pattern and practice of committing torts such as trespass to chattels, and will continue this practice if no preventative and/or corrective action is taken.

617.    Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

618.    This has caused D. Ford, and will cause Plaintiffs, monetary losses, pain, suffering, emotional distress, fear, and humiliation.

619.    Plaintiffs are entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### COUNT XVIII: Tortious Interference

**[S. Jones against Non-City Defendants Only]**

620.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

621.     S. Jones had a contract to provide childcare services to a client at her apartment.

622.     Martinez and/or other A-Alert Defendants knew that S. Jones provided childcare services to this client in exchange for consideration.

623.     Martinez and/or other A-Alert Defendants intended to interfere with this contract by banning S. Jones' client from Concordia Place, threatening to arrest her, and telling her to find a new childcare provider.

624.     Martinez and/or other A-Alert Defendants did interfere with this contract because S. Jones' client is subject to being arrested and charged with criminal trespassing if she returns to Concordia Place, thereby preventing Jones from continuing the contract.

625.     Martinez and/or other A-Alert Defendants will continue to interfere with S. Jones' contracts in the future, as well as with other residents' contracts to provide goods or services to invitees at Concordia Place, if no preventative and/or corrective action is taken.

626.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for these violations because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

627.     This has caused and will cause S. Jones monetary losses, pain, suffering, emotional distress, fear, and humiliation.

628.     S. Jones is entitled to declaratory, injunctive and monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

**COUNT XIX: Violations of the Municipal Code of Chicago**
**[R. Davis, J. Fleming, K. Jones, M. Jones & S. Jones against Non-City Defendants Only]**

629.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

630.     Under § 5-12-050 of the Chicago Municipal Code, in the Residential Landlords and Tenants Chapter, a landlord may not abuse the right of reasonable access to tenant apartments in order to harass the tenant.

631.     Further, unless there is an emergency, or the landlord unexpectedly needs access to an apartment in order to carry out repairs or maintenance being done on other areas of the building, the landlord must give a tenant no less than two (2) days of notice of the intent to enter.

632.     Defendants Martinez and/or other A-Alert Defendants, acting as agents in the scope of employment for Plaintiffs' landlord, violated these provisions of the Chicago Municipal Code.

633.     In doing so, these Defendants caused these Plaintiffs damages including, but not limited to, property damage and emotional distress.

634.     These Defendants have established a pattern and practice of violating this provision against other residents, and will continue this practice if no preventative and/or corrective action is taken.

635.     Under § 5-12-060, the Plaintiffs are entitled to injunctive relief to prevent further such conduct and an amount equal to one month's rent or twice the damage sustained by them.

636.     Defendants Concordia Place Partnership, Promex, and/or DRE, are liable for this violation because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents.

**Count XX: Direct Liability for Defendants A-Alert, Concordia Place Partnership, DRE and/or Promex (for Negligent Hiring, Retention, Supervision, and/or Training) [All Plaintiffs against Non-City Defendants Only]**

637.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

638.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, had a duty to Plaintiffs not to negligently hire, retain, supervise, or train the security guards under their agency, employment, control, or direction.

639.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, had knowledge of previous similar violations by their agents/employees who also committed the violations described herein, yet failed to take any appropriate action to prevent further such actions.

640.     These Defendants had knowledge that Martinez and/or the other A-Alert Defendants were unfit to act as security guards in that they created an unreasonable danger of harm to residents and visitors at Concordia Place.

641.     In fact, about 75 people, made up of Plaintiffs and other Concordia Place residents, submitted a petition to Promex and/or DRE, which listed various complaints about A-Alert's racially motivated, unlawful conduct and demanding that A-Alert be terminated from its duties at Concordia Place.

642.     DRE and/or Promex refused to take any action in response to this petition; rather, they advocated for A-Alert and commended its performance.

643.     Further, prior to the incidents complained of herein, these Defendants had received numerous other complaints from other residents and visitors of Concordia Place alleging similar harms or wrongful conduct by Martinez and other A-Alert Defendants.

644.     The decision to continue to retain these agents/employees despite this knowledge, as well as the failure to take any action to prevent any future violations, was a breach of this duty and caused Plaintiffs' injuries at the hands of these employees/agents here.

645.     Defendants A-Alert, Concordia Place Partnership, Promex, and/or DRE, are liable for the violations in this complaint because of their negligence in continuing to retain these employees/agents, as well as their failures to properly train or supervise these agents/employees, and their failures to correct or prevent the violative actions of these employees/agents.

646.     These failures have caused and will cause Plaintiffs monetary losses, pain, suffering, emotional distress, fear, and humiliation.

647.     Plaintiffs is entitled to monetary relief, including compensatory damages, punitive damages, attorney's fees, and costs.

### Count XXI: Vicarious Liability for Defendants A-Alert, Concordia Place Partnership, DRE, and/or Promex
### [All Plaintiffs against Non-City Defendants Only]

648.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

649.     For all actions giving rise to the claims above, Defendant Martinez was acting as an employee and/or President of A-Alert, other A-Alert Defendants were acting as employees of Martinez and/or A-Alert, DRE and/or Promex was acting as the employer of A-Alert, and DRE and/or Promex and/or their agents/employees were acting as employees/agents of the Concordia Place Partnership.

650.     Further, for all actions giving rise to the claims above, Defendant Martinez was acting within the scope of his employment as head security guard and/or president of A-Alert, other A-Alert Defendants were acting within their scope of employment as security guards for Martinez and/or A-Alert, A-Alert was acting within the scope of its employment as a private security force for DRE and/or Promex, the employees/agents of DRE and/or Promex were acting within the scope of their employment for DRE and/or Promex, and DRE and/or Promex were acting within the scope of their employment for Concordia Place Partnership.

651.     Each of these entities is liable as a principal for the acts of their agents committed within the scope of employment.

652.     Further, A-Alert, the Concordia Partnership, Promex, and/or DRE confirmed, allowed, acquiesced to, promoted, and/or directed the tortious actions complained of in this action.

653.     Therefore, A-Alert, the Concordia Place Partnership, Promex, and/or DRE are liable for the tortious actions of their employees/agents alleged above.

### COUNT XXII: Statutory Liability for the Defendant City

654. Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

655. Pursuant to 745 ILCS 10/9-102, the CITY OF CHICAGO is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an employee police officer, acting within the scope of his employment, is found liable.

656. The acts and/or omissions of the defendant officers were committed within the scope of their employment.

657. As a result, In the event that a judgment for compensatory damages is entered against one or more of the defendant officers, the CITY OF CHICAGO must pay the judgment as well as the associated attorneys' fees and costs.

**WHEREFORE**,

Plaintiffs respectfully request that this Court:

A. Declare that Defendants' banning policy, as written and as applied, is unconstitutional as violative of the due process guarantees and of the Bill of Rights and the Fourteenth Amendment to the United States Constitution, as well as the mirrored provisions of the Illinois Constitution;
B. Declare that any legal authority purportedly allowing the banning policy as written and as applied, is unconstitutional as violative of the due process guarantees and of the Bill of Rights and the Fourteenth Amendment to the United States Constitution, as well as the mirrored provisions of the Illinois Constitution;
C. Preliminarily and permanently enjoin the violative conduct of Defendants complained of herein;
D. Award compensatory damages against all Defendants, in an amount to be determined by a jury;
E. Award punitive damages against Defendant CPD Officers, Martinez, and/or other A-Alert Defendants, in an amount to be determined by a jury;
F. Award statutory damages against Defendants Concordia Place Partnership, DRE, and Promex, jointly and severally, in an amount to be determined by a jury;
G. Award Plaintiffs' attorney's fees and costs incurred in bringing this action; and
H. Grant such other and further relief as the Court may deem just and proper.

## PLAINTIFFS REQUEST A TRIAL BY JURY

Plaintiffs demand a jury trial on the claims herein that are rightfully triable by jury.

BY:     s/Julie O. Herrera

74

Julie O. Herrera
*One of Plaintiffs' Attorneys*

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812