IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shwanda Jones, et al. | No. 15 C 3537 |
| Plaintiffs, | Judge Virginia M. Kendall |
| v. | |
| A-Alert Security Services, Inc., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed their 22-count Third Amended Complaint against Concordia Place Apartments, L.P., A-Alert Security Services, Inc., Promex Midwest Corporation, DRE, Inc., Ricky Martinez, the City of Chicago, and known and unknown A-Alert Security Guards and Chicago Police Officers for civil rights violations under 42 U.S.C. § 1983, race discrimination under Title VI, and numerous violations of state law.[1] Plaintiffs include 24 African American residents of Concordia Place Apartments, nine minor children of Concordia residents, and one former resident of Concordia. Plaintiffs also include five African American relatives of Concordia residents, four of whom have been banned from visiting Concordia.

Defendants Concordia, Promex, and DRE move to dismiss all counts against them. A-Alert and Ricky Martinez ("A-Alert defendants") move to dismiss counts I through VII against them. For the following reasons, the Court grants the motions to dismiss brought by Concordia, Promex, DRE, and the A-Alert defendants.

---

[1] Earlier versions of the complaint also included allegations regarding the U.S. Fair Housing Act. Plaintiffs voluntarily dismissed these allegations prior to filing their Third Amended Complaint in Dkt. No. 55, 14.

1

## BACKGROUND

The Court takes the following allegations from the Third Amended Complaint[2] and treats them as true in evaluating this motion. *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 550 (7th Cir. 2010). Concordia is a low-income housing project in Chicago, Illinois that is subsidized by the United States Department of Housing and Urban Development. (Dkt. No. 68, ¶ 22). Concordia is comprised of approximately 297 studio, one-bedroom, two-bedroom, and three-bedroom apartment units. (*Id.*) Defendant DRE is a real estate investment, development, and management firm that has a partial ownership interest in, and acts as the general partner of Concordia. (*Id.* at ¶ 23). Defendant Promex is a property management company. (*Id.* at ¶ 24). Together, DRE and Promex provide on-site management for Concordia. (*Id.* at ¶ 25). Ricky Martinez is the president of A-Alert, the private company that provides on-site security to Concordia. (*Id.* at ¶¶ 27-28). He also acts as the head security guard and supervisor of A-Alert at Concordia. (*Id.* at ¶ 29).

This case arises from misconduct by the allegedly "draconian security force at Concordia Place that amounts to a private security force." (*Id.* at ¶ 56). Plaintiffs allege that A-Alert guards drive vehicles with lights similar to those of police cars in excess of 40 miles per hour on grass and concrete, that they carry guns, wear body armor, and use K-9 dogs to sniff and search residents, visitors, property, and vehicles. (*See id.* at ¶¶ 58-67). They maintain that the guards conduct vehicle searches, body searches, strip searches, and home searches. (*Id.* at ¶¶ 68-72). Plaintiffs complain of other physical acts, including residents being handcuffed, pushed against walls, slammed into the ground, and detained. (*Id.* at ¶¶ 73-77). Plaintiffs maintain that the A-

---

[2] Movants have asked this Court to apply the arguments set forth in their motions to dismiss Plaintiffs' Second Amended Complaint to the newly-filed Third Amended Complaint. Plaintiffs have voiced no objection and the Court finds that the Second and Third Amended Complaints are materially the same for purposes of evaluating these motions. The Court, therefore, considers the allegations set forth in the Third Amended Complaint.

Alert guards have discretion over their duties and "perform these actions, in large part, without relying on the actual police for anything other than transporting residents and visitors to CPD stations and actually charging them with crimes." (*Id*. at ¶¶ 93-94).

Plaintiffs also allege that Concordia, DRE, Promex, and/or A-Alert have developed an unlawful process for "banning non-resident individuals from stepping foot onto any area of Concordia Place." (*Id*. at ¶ 41). They claim that, pursuant to this policy, Martinez and other A-Alert guards have banned individuals from the property, at times providing individuals with "Criminal Trespass Notices" indicating that the individuals "will be arrested and charged for criminal trespass if they return to Concordia Place." (*Id*. at ¶¶ 42-43). The banned individuals are often "family members, intimates, friends, clients, acquaintances, guests, or visitors of Concordia Place residents." (*Id*. at ¶ 46). If the guards learn that a banned individual has entered Concordia, the individual is often immediately apprehended and detained by the guards, who then call the Chicago Police Department to arrest and charge the individual for criminal trespass. (*Id*. at ¶ 47).

Plaintiffs maintain that this "draconian" security force was established by the A-Alert defendants "on behalf of the Concordia Place Partnership, DRE, and/or Promex." (*Id*. at ¶ 56). They further insist that the actions of all the defendants are in fact "so interrelated with the goals and direction of the State of Illinois and City of Chicago that they constitute state action for the purposes of 42 U.S.C. § 1983." (*Id*. at ¶ 110). In support of this position, Plaintiffs claim that the "federal government, the State of Illinois, and the City of Chicago worked together directly with the Concordia Partnership, DRE, and/or Promex to approve the development, financing, ownership, and operation of Concordia Place." (*Id*. at ¶ 102). They claim that Concordia Partnership funded part of the purchase of Concordia with City of Chicago bonds and that

Concordia, Promex, and DRE currently receive federal rent subsidies to operate Concordia. (*Id*. at ¶¶ 103-104).

## DISCUSSION

Defendants Concordia Place Apartments, L.P., A-Alert Security Services, Inc., Promex Midwest Corporation, Dre, Inc., Ricky Martinez, and unknown A-Alert Security Guards now move pursuant to Rule 12(b)(6) to dismiss the Section 1983 and Title VI claims brought against them. Under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When discussing the merits of a motion to dismiss, the Court must view the facts in the light most favorable to the non-moving party and facts alleged must be accepted as true. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). While factual allegations do not need to be detailed, the plaintiff must put forth facts that "when accepted as true…state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). If the facts pled in the complaint permit the Court to reasonably infer the defendant is liable and relief can be granted, it is facially plausible. *Id*. at 678.

### I. MARTINEZ AND A-ALERT

#### A. Section 1983

Plaintiffs bring Counts I through III and V through VII against A-Alert, its president Ricky Martinez, and other A-Alert security officers for a variety of constitutional violations under Section 1983. Under Section 1983, "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any

citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Typically, this statute is only invoked against government officers because it requires that the defendant act "under color of state law." *See Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999). Section 1983 claims may, however, also be invoked against "private individuals who exercise government power." *Id*.

Here, the A-Alert defendants argue that the federal constitutional claims against them must be dismissed because they did not take action "under color of state law." Whether a private party acts under color of state law is often, but not always, a fact-intensive inquiry. When appropriate, Courts may conclude that there is no state action as a matter of law. *See, e.g., London v. RBS Citizens, N.A.*, 600 F.3d 742 (7th Cir. 2010); *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 821 (7th Cir. 2009); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 853 (7th Cir. 2002); *Fries v. Helsper*, 146 F.3d 452 (7th Cir. 1998). The issue in this case is whether Plaintiffs have alleged sufficient facts to make state action plausible.

"The Supreme Court has set forth various tests to use when deciding whether someone is a governmental actor, including the 'symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test.' " *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823–24 (7th Cir. 2009)). But, "[a]t its most basic level, the state action doctrine requires that a court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.' " *Rodriguez*, 577 F.3d at 823 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351

5

(1974)). In this case, Plaintiffs maintain that the nexus between the State and the A-Alert defendants' police functions is sufficient to demonstrate state action and that the mutuality of support and benefits under the arrangement shows a symbiotic relationship. (*See* Dkt. No. 40, 4-5). The Third Amended Complaint, however, fails to plausibly allege any facts suggesting the Plaintiffs could satisfy the requirements of either of these theories.

### 1. The Public Function Test

Under the "public function" test, a private entity is deemed as having acted under color of state law when the state delegates a public function to that entity. *See Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896 (7th Cir. 2004). Plaintiffs insist that the A-Alert guards are private police officers, arguing that their duties as security guards are an extension of Illinois' "police powers." The A-Alert defendants refute this argument, maintaining that their guards are merely private security guards. Though the Supreme Court has explicitly left open the question of whether, and in what context, "private police forces" may be considered state actors, *see Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 163–64 (1978), the courts in this Circuit have held private police officers or security guards liable as state actors under § 1983 in certain circumstances. *See, e.g., Payton*, 184 F.3d at 630 (allegations that private guards were acting under color of law sufficient to survive motion to dismiss where ordinance governing guards delegated police powers otherwise exclusively reserved to the state); *United States v. Shahid*, 117 F.3d 322, 324 (7th Cir. 1997) (private mall security force was not a state actor because the guards exercised no "police powers"); *Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996) (finding on summary judgment that a private security guard operating under a contract with the Chicago Housing Authority was not a state actor); *United States v. Hoffman*, 498 F.2d 879, 881–82 (7th Cir. 1974) (criminal case in which privately employed railroad police were deemed state actors);

*see also, e.g., Scott v. Northwestern University School of Law*, No. 98 C 6614, 1999 WL 134059 at *3–4 (N.D. Ill. March 8, 1999) (holding that private hospital security guards and university policemen also can be state actors); *Stokes v. Northwestern Memorial Hospital*, No. 89 C 2352, 1989 WL 84584 at *3–4 (N.D. Ill. July 24, 1989) (cited with approval in *Payton*, 184 F.3d at 628) (hospital police officers acting under color of state law where ordinance governing their conduct granted them, among other things, the power to arrest anyone they wished).

This case, however, is distinguishable from the cases cited because Plaintiffs do not identify a statute, ordinance, or other state directive providing for the creation of Concordia security. *Contra Payton*, 184 F.3d 623; *Hoffman*, 498 F.2d 879; *Scott*, 1999 WL 134059; *Stokes*, 1989 WL 84584; *see also, e.g., Boyle v. Torres*, 756 F. Supp. 2d 983 (N.D. Ill. 2010) (university officers acting under color of law where their authority was derived from 110 ILCS 1020/1). Rather, Plaintiffs ask the Court to infer from their factual allegations that the State and City have "effectively delegated Defendants the function of a private police force at a housing project that is largely public in nature." (*See* Dkt. No. 40, 10). Though the Court questions whether implied delegation can ever lead to liability under Section 1983, it need not weigh in on that issue at this time; even assuming such delegation is possible, Plaintiffs have failed to plead facts sufficient to demonstrate that such police powers were effectively delegated in this case.

In lieu of a statute providing an express delegation of police powers to the A-Alert defendants, Plaintiffs identify a number of facts they believe give rise to an inference of delegation. Plaintiffs point out that Concordia apartments are frequented by the public for a variety of purposes, including picking up children, delivering groceries, providing transportation, dropping children off for daycare, visiting relatives and friends, and running errands. (*See* Dkt. No. 40, 8-9). They insist that Concordia and the A-Alert defendants "only exist and function as a

7

product of government – Concordia Place has been approved, developed, financed, subsidized, and assisted by not only the federal government, but by the State of Illinois and City of Chicago;" that Chicago Police Department helps the A-Alert defendants carry out their unlawful banning policy; and that the A-Alert defendants are acting under specific State laws such as 225 ILCS 447, which allows for the use of private security officers in protecting property. (*See* Dkt. No. 40, 8-9).

Plaintiffs conclude that "[i]t is more than reasonable […] to infer from these facts that the approval, development, and financing of Concordia Place have been, and are, contingent upon the owners/managers of the apartment project hiring private security. It is also reasonable to infer that the State and/or the City of Chicago have established requirements that this security must meet." (Dkt. No. 40, at 9). The Court disagrees. These are not plausible inferences based on the facts alleged. Just because members of the public visit Concordia and the A-Alert guards perform functions that serve the public does not transform them to state actors. *See Payton*, 184 F.3d at 629. Nor does the fact that Concordia has received and continues to receive federal, state, and city funding. If there were some relationship between Concordia's receipt of government subsidies and the hiring of its private security, then Plaintiffs need to plead facts to support that claim. The Court is willing to assume for purposes of evaluating this motion that A-Alert is in fact governed by the Illinois statute regarding private security, but that statute does not delegate powers exclusively reserved for the police to private security guards in general—let alone to the A-Alert guards at Concordia in particular. *See* 225 ILCS 447/10, *et seq*.

Plaintiffs allege that Defendants "order the CPD to charge residents and visitors with crimes" and that they seek to have the CPD falsely charge residents with criminal violations. (Dkt. No. 24, ¶¶ 85-88). They do not, however, allege that the CPD actually partakes in, knows

8

of, or sanctions these practices. On the contrary, Plaintiffs allege that Defendants perform the complained of conduct "in large part, without relying on the actual police for anything other than transporting the residents and visitors to CPD stations and actually charging them with crimes." Indeed, Plaintiffs concede that the City of Chicago Police patrol the Concordia premises and respond to calls from residents—both of which further caution against finding state action plausible in this case. (*See* Dkt. No. 68, ¶¶ 164-65 (residents called police to a disturbance and police responded); ¶¶ 238-239 (police called to prevent a car from being towed by A-Alert defendants and police responded)). If anything, these anecdotes indicate that whatever misconduct is being performed by the A-Alert defendants is not sanctioned by the City of Chicago Police Department, let alone the County or the State. Plaintiffs allege plenty of facts indicating that the A-Alert defendants were carrying out activities commonly performed by police officers; that is not the issue. The issue is that their pleadings do not plausibly state that this conduct is the result of an implied or express delegation of those powers by the State.

### 2. Symbiotic Relationship Test and Entwinement

Plaintiffs' allegations similarly fail under the "symbiotic relationship" test. Under this inquiry, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982) (internal citation and quotation marks omitted); *see also Hallinan*, 570 F.3d at 816 (mere relationship is not enough; there must be "such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself"). This inquiry, like the inquiry already discussed, is rooted in the facts and circumstances unique to the specific relationship at issue. But, here too, the facts pled do not give rise to a plausible inference of government action.

9

Plaintiffs insist that the A-Alert defendants exercise the full range of traditional police powers; that the exercise of those powers is the "result of State and City decisions which essentially require that the owners/managers of the Concordia Place […] employ a private police force in order to remain in existence, (Dkt. No. 40, 11); and that the State and City "are so much a part of the nature and existence of the Defendants' 'police force' that it is not only justified to require that the officers of the Defendants obey the Constitution, but that it is necessary…" (*Id*.). These conclusions, however, without factual underpinnings, are insufficient to survive a motion to dismiss. Plaintiffs do not allege that Concordia's receipt of government subsidies is contingent upon the employ of private security guards and they do not allege that the City or State pay for, know of, or have any other relationship to the A-Alert defendants.

The bottom line is that "[a]ll of the tests, despite their different names, operate in the same fashion: [ ] by sifting through the facts and weighing circumstances." *Tarpley v. Keistler*, 188 F.3d 788, 792 (7th Cir. 1999) (cited by *Hallinan*, 570 F.3d at 816). Even reading all of the facts in the light most favorable to the Plaintiffs, there can be no plausible inference that the A-Alert defendants were acting under color of state law. The Court recognizes the seriousness of the Plaintiffs' allegations and further recognizes that there are avenues available for these Plaintiffs to seek redress; Section 1983 liability is just not one of those avenues based on the facts now before this Court. *See Ashcroft*, 129 S. Ct. at 1950 (holding that facts pled in complaint must "permit the court to infer more than the mere possibility of misconduct"). The A-Alert defendants' Motion to Dismiss Counts I-III and V-VII of Plaintiffs' Third Amended Complaint is granted.

**B. Title VI**

In Count IV of their Third Amended Complaint, Plaintiffs allege that the A-Alert defendants are liable for intentionally discriminating against Plaintiffs[3] based on their race in violation of Title VI of the Civil Rights Act of 1964. Under Title VI, no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d. A private right of action under Title VI is only available against the recipient of federal financial assistance. *See Adatsi v. Mathur*, No. 90 C 2002, 1991 WL 105765 at *2 (7th Cir. 1991). In this case, the A-Alert defendants are not recipients of federal financial assistance.

Plaintiffs allege that "[t]he Concordia Partnership, Promex, and/or DRE receive federal assistance in operating Concordia Place, in the form of rent subsidies," Dkt. No. 68, ¶ 103, but that allegation alone does not give rise to the inference that part of those subsidies are used to fund the A-Alert defendants. Plaintiffs allege that the "federal government, the State of Illinois, and the City of Chicago worked together directly with the Concordia Partnership, DRE, and/or Promex to approve the development, financing, ownership, and operation or Concordia Place." (*Id.* at ¶ 102). This allegation similarly does not imply that the parties necessarily discussed security or, if they did discuss security, that they tied receipt of federal funding to the provision of private security.

In their response brief, Plaintiffs insist that it is reasonable to infer that part of the federal financial assistance received by the housing complex is "directly earmarked" for security at Concordia. Again, the Court finds this inference untenable from the facts alleged. The private

---

[3] Plaintiffs have agreed to dismiss their Title VI claims brought on behalf of Plaintiffs David Sanders, James Ford, and Tyree Laws because they are non-residents of Concordia and therefore not the intended beneficiaries of federal assistance. (Dkt. No. 40, 15). The Court grants the dismissal of Count IV with respect to those plaintiffs and does not consider them in its analysis.

11

security program at Concordia is not subject to Title VI regulations merely because Concordia received rent subsidies. *See David K. v. Lane*, 839 F.2d 1265, 1275-76 (7th Cir. 1988); *see also, e.g., Adatsi*, 1991 WL 105765, at *2 (university only defendant to receive federal financial assistance, not individually named dean and faculty member). As already discussed, Plaintiffs have not alleged that Concordia's receipt of funding is contingent on its hiring private security guards and the Court cannot draw such an inference from the factual allegations before it. The A-Alert defendants' Motion to Dismiss Count IV of Plaintiffs' Third Amended Complaint is granted.

## II. CONCORDIA, PROMEX, AND DRE

Like the A-Alert defendants, Concordia, Promex, and DRE (collectively "Concordia defendants") also move to dismiss Plaintiffs' claims against them. Plaintiffs bring Counts I through III and V through VII against the Concordia defendants for a variety of constitutional violations under Section 1983. As already discussed, under Section 1983, "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. Like the A-Alert defendants, the Concordia defendants argue that the federal constitutional claims against them must be dismissed because they did not act "under color of state law" as required by the statute. Though determining whether a private party acts under color of state law is usually a fact-intensive inquiry, the Court may conclude that there is no state action as a matter of law. *See, e.g., London*, 600 F.3d 742; *Hallinan*, 570 F.3d at 821; *Gayman*, 311 F.3d at 853; *Fries*, 146 F.3d 452. The issue is whether Plaintiffs have alleged sufficient facts to make state action plausible.

As already explained, there are several tests used for determining whether a private party is a governmental actor, including the symbiotic relationship test, the state command and encouragement test, the joint participation doctrine, and the public function test. *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 738 (7th Cir. 2015). "But '[a]t its most basic level, the state action doctrine requires that a court find such a close nexus between the State and the challenged action that the challenged action may be fairly treated as that of the State itself." *Id*. (quotations omitted). In this case, there is no such nexus.

Plaintiffs allege that the Concordia defendants' "employing a substitute police force and enacting a banning policy to be carried out by it was the result of them being 'so interrelated with the goals and direction of the State of Illinois […] and City of Chicago […] that those actions constitute state action." (Dkt. No. 55, 6). They further assert that the City and State cannot provide enough affordable housing and that the City "must work with private entities to provide housing when necessary." (*Id*.) They allege that the federal government, State, and City work together with the Concordia defendants to "approve the development, financing, ownership, and operation" of Concordia. (Dkt. No. 68, ¶ 102). They maintain that Concordia has received federal funding in the form of rent subsidies and City of Chicago bonds for the purchase and development of Concordia. (*Id*. at ¶¶ 103-04). But, even assuming all of these allegations are true, they do not reasonably give rise to the inference that the State has effectively delegated a traditional state power to the Concordia defendants.

First, there has been no delegation of a traditionally exclusive public function to the Concordia defendants by the State. *See Rendell–Baker*, 457 U.S. at 841. As the Court addressed in greater detail above with respect to the A-Alert defendants, there is no allegation that the maintenance of a private security force or the maintenance of a banning policy was suggested by

the State, known about by the State, or approved of by the State. The Concordia defendants may receive federal, state, or city funding, but there is no allegation that any of their funding is in any way tied to, contingent upon, or related to the challenged conduct in this case.

Other than funding, the only link alleged to exist between the State and the Concordia defendants is that Concordia must comply with the generic regulations of private entities receiving funding or providing private security. Compliance with these statutes, however, does not render these otherwise private entities to be acting under color of state law. "[A] private entity does not act under color of state law merely by virtue of participating in a highly regulated activity or by complying with state or federal regulations." *See, e.g., Phillips v. Quality Terminal Serv's, LLC*, 855 F. Supp. 2d 764, 778-79 (N.D. Ill. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358–59 (1974) ("heavily regulated, privately owned" electric company not a state actor for purposes of Fourteenth Amendment); *see also Rendell–Baker*, 457 U.S. at 841 (quoting *Jackson*, 419 U.S. at 350) ("state regulation, even if 'extensive and detailed,' d[oes] not make a utility's actions state action"); *Holzgrafe v. Hinsdale Bank & Trust Co.*, No. 09 C 2310, 2009 WL 3824651, at *2 (N.D. Ill. Nov. 13, 2009) (holding that "a private commercial entity does not act under color of state law just by dint of being subject to state or federal regulations, even when those regulations are extensive"); *Evans v. Torres*, No. 94 C 1078, 1996 WL 5319, at *5 (N.D. Ill. Jan. 4, 1996) (stating that "individuals do not become state actors merely by acting in accordance with state statutes")). Plaintiffs bear the burden of alleging facts that plausibly suggest that they have a right to relief and they have failed to do so. The Concordia defendants' motion to dismiss the claims brought against it pursuant to Section 1983 is granted.[4]

---

[4] The Court notes that Plaintiffs maintain that one of their underlying theories of liability against the Concordia defendants is that the alleged discriminatory conduct took place as a result of the Concordia defendants' policy or

Plaintiffs have similarly failed to plead a cause of action against the Concordia defendants under Title VI of the Civil Rights Act of 1964. As stated above, under Title VI, no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d. Plaintiffs' Title VI claim is based on direct evidence of racially derogatory statements made by the A-Alert guards to mostly African American residents in the course of alleged constitutional violations. Plaintiffs maintain that the Concordia defendants are "directly liable for violations committed by Martinez and/or other A-Alert Defendants because of their negligence in hiring or training their employees/agents, as well as their failures to supervise, correct, or prevent the actions of their employees/agents." (Dkt. No. 68, ¶ 512). On the contrary, to state a cause of action against the Concordia defendants under Title VI for the alleged violations committed by Martinez and other A-Alert defendants, Plaintiffs must plead facts demonstrating that the Concordia defendants' conduct amounted to deliberate indifference.[5] *See Gebster v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290-91 (1998);

---

custom, giving rise to liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see* Dkt. No. 55, at 9, 14. It would have been appropriate in this case, considering the length of the complaint and the number of defendants and claims, for Plaintiffs to separate their *Monell* claim into a separate count. However, even assuming Plaintiffs properly structured their *Monell* claim, it too fails because Plaintiffs have not alleged sufficient facts to show that the Concordia defendants were acting under color of state law and, therefore, also failed to allege a cognizable constitutional injury. *See, e.g., Othman v. City of Chicago*, No. 11 C 05777, 2012 WL 2929954, at *3 (citing *Houskins v. Shehan*, 549 F.3d 480, 493 (7th Cir. 2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail); *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) (a *Monell* claim "requires a finding that the individual officer are liable on the underlying substantive claim.")).

[5] The Court notes that the Concordia defendants did not raise the issue of whether deliberate indifference was adequately pled until their response brief. Generally, arguments not raised in the original motion to dismiss are waived and cannot be considered by the Court. *See United States v. Adamson*, 441 F.3d 513, 521 n. 2 (7th Cir. 2006). In this case, however, Plaintiffs have not moved to strike the argument and the Court finds that the Concordia defendants' reply was responsive to matters that were raised for the first time in the Plaintiffs' response, including invitation for the Concordia defendants to address the deliberate indifference allegations under Section 1983. *See Doe v. Galster*, 768 F.3d 611, 622 (7th Cir. 2014) (applying Title VI deliberate indifference analysis to Section 1983 claim). The Court, therefore, considers the argument. *See North v. Madison Area Ass'n for Retarded Citizens-Developmental Centers Corp.*, 844 F.2d 401, 405, n. 6 (7th Cir. 1988) (denying motion to strike and considering arguments raised in reply brief that were responsive to response brief).

*Curley ex rel. Curley v. Hill*, No. IP97-0570-C-H/G, 2000 WL 1708007, at *1 (S.D. Ind. 2000). They have failed to do so.

Plaintiffs allege that Concordia residents have made "numerous complaints" to Promex and DRE about the discriminatory and unfair use of the banning practice by Martinez and other A-Alert guards, but they admit that there is an automatic review procedure by Promex and DRE for bans that were not the result of violence, drugs, criminal activity, and/or weapon charges against banned individuals. (Dkt. No. 68, at ¶¶ 49-50). They allege that DRE and Promex have been unresponsive to Plaintiff J. Fleming's attempts to complain, but they fail to provide facts to support that conclusion. They fail to state how Fleming attempted to complain, how many times she attempted to complain, or to whom she attempted to complain. Plaintiffs provide other, similarly conclusory allegations that the Concordia defendants have been unresponsive to resident complaints, but they fail to provide facts suggesting anything close to deliberate indifference. On the contrary, Plaintiffs concede that the Concordia defendants have engaged in negotiations with the alderman and Concordia residents about the banning policy and that the review process was the result of—in Plaintiffs' words— a "mutual agreement between Promex and/or Dre and Concordia Place residents." (*Id*. at ¶ 49, n. 4). Plaintiffs may not be satisfied with the result of those negotiations, but their dissatisfaction does not render the Concordia defendants deliberately indifferent to the alleged discrimination. The standard of deliberate indifference sets a high, but not impossibly high, bar for plaintiffs to reach under Title VI. *See Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014). Plaintiffs have failed to meet that bar and the Concordia defendants' motion to dismiss Count IV is granted.

### III. STATE LAW CLAIMS

The Court dismisses the remaining state law claims against the A-Alert and Concordia defendants without prejudice to refile in state court. The Court refuses to exercise supplemental jurisdiction over the remaining state law claims against the A-Alert and Concordia defendants in the interest of judicial economy, convenience, fairness, and comity. *See* 28 U.S.C. § 1367(c)(4); *Montano v. City of Chicago*, 375 F.3d 593, 601-02 (7th Cir. 2004) (citing *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997)). The City defendants moved to sever the claims against it (over which this Court retains original jurisdiction) into three separate suits because the claims do not arise out of the same transaction or occurrence and because there is no common question of law or fact that will arise in the adjudication of all these claims. (*See* Dkt. No. 85). At the status hearing on December 14, 2015, Plaintiffs agreed to the severance. In light of this development, the Court finds that holding onto the state law claims against the A-Alert and Concordia defendants would only hinder this litigation and cause unnecessary complication and delay in resolving the matter. The Court, therefore, declines to exercise supplemental jurisdiction over the state law claims.

### CONCLUSION

For the foregoing reasons, the A-Alert defendants' motion to dismiss [33] is granted, as is the Concordia defendants' motion to dismiss [44]. The state law claims against these defendants are dismissed for lack of jurisdiction. Plaintiffs may refile their complaint against these defendants by January 8, 2016 if they are able to do so within their obligations under the local rules and Fed. R. Civ. P. 11.

Date: 12/28/2015

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois